1

2

3

4
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

In Re:

ASHMEEN MODIKHAN, Debtor

Ashmeen Modikhan

Plaintiff

vs

Darren Aronow, Esq, Hanin R. Shadood, Esq,

Courtney R. Williams, Esq, Fay Servicing,

LLC, Rushmore Loan Management Services,

Inc, and Marianne DeRosa, Chapter 13 Trustee

Defendants

**ADVERSARY COMPLAINT**

Adversary Complaint Case No:

Bankruptcy Case No.: 19-46591-ess
(Chapter 13)
Assigned to:
Hon. Elizabeth S. Strong
Bankruptcy Judge

**CAUSES OF ACTION FOR:**

1. FRAUD

2. MISREPRESENTATION

3. REPLEVIN

4. WIRE FRAUD

5. TEMPORARY RESTRAINING ORDER

The Court has Jurisdiction in this matter as the Complaint entails issues currently before the

lower Bankruptcy Court.

**JURISDICTION**

This Court has Jurisdiction over this case as an adversary proceeding pursuant to 18

U.S.C. § 1343 (Wire Fraud) and § 152(4) (Introducing False Documents onto the Court Record

for Financial Gain)

Plaintiff has standing to bring this action.

## PARTIES

1    I, Ashmeen Modikhan, (hereinafter referred to as "Plaintiff"), submits this Complaint against
the following persons for the return of money in the amount of $86,500.00 both individually and
severally:

(1)    **Darren Aronow, Esq.,** (hereinafter "Defendant Aronow") Debtor's attorney of record
in current Chapter 13 bankruptcy case, and

(2)    **Hanin R. Shadood, Esq.** (hereinafter "Defendant Shadood") Debtor's attorney of
record in current Chapter 13 bankruptcy case and current employee of Marianne DeRosa, Trustee,
and Chapter 13 Trustee of Plaintiff's current Chapter 13 Trustee, and

(3)    **Courtney R. Williams, Esq., of Gross Polowy, LLC,** individually (hereinafter
"Defendant Williams") and as attorney for Rushmore Loan Management Services, Inc as agent for
Tiki Series IV Trust (hereinafter "Creditor Rushmore"), and

(4)    **Courtney R. Williams, Esq., of Gross Polowy, LLC,** individually (hereinafter
"Defendant Williams") and as attorney for as agent for U S Bank National Association as Legal Title
Trustee for Truman 2016 SC6 Title Trust (hereinafter "Creditor Fay Servicing"), and

(5)    **Marianne DeRosa, Chapter 13 Trustee,** (hereinafter "Defendant DeRosa") current
Trustee over Plaintiff's current bankruptcy case.

This Adversary Proceeding (with respect to Plaintiff's ongoing Chapter 13 Bankruptcy filing under
Case No. 19-46591-ess) is initiated to protect the Plaintiff's assets.

## FACTS

On or about January 12, 2021 "Plaintiff" filed the following Motion to Return all Monies
($86,500.00) paid by Debtor, to the above Parties, the amounts which were paid inside and outside

1   the Trustee record keeping system on the orders of the above referenced Parties which "Plaintiff"

2   is memorializing as "Defendants" Loan Modification Scam as follows.

3       Debtor, Ashmeen Modikhan, files this Debtor's Response to Attorney's Motion to

4   Withdraw and Request for the Return of Fees and Trustee Payments, and says.

5

6

7       **Causes of Action for 1. FRAUD and 2. MISREPRESENTATION**

8

9       This matter comes before the Honorable Judge Elizabeth S. Strong, Bankruptcy Judge, as

10  the result of a Motion to Withdraw as Debtor's Council filed by Darren Aronow in this Court on

11  12/30/2020, who is conducting consumer protection business under the names of

12

13      Aronow Law, Corp. d/b/a Aronow Law, PC. d/b/a Aronow Law, PC ("Aronow Law") and

14  Darren Aronow ("Mr. Aronow"), (collectively the "Defendants").

15      Hanin Shadood, Esq remains attorney of record for the Plaintiff/Debtor per the docket as of

16  the writing of this Adversary Complaint as well as being a current employee of Marianne DeRosa,

17  Chapter 13 Trustee, and the current assigned Trustee for the Plaintiff/Debtor's underlying Chapter

18  13 case. No Motion to Withdraw has been filed to date by Hanin Shadood, Esq. There is no Notice

19  of Substitution of Trustee has been filed to date by Marianne DeRosa, Chapter 13 Trustee.  This

20  relationship is a conflict of interest.

21

22

23      **The Motion to Withdraw as Debtor's Counsel was filed by "Defendants" Aronow is**

24  **based upon the Debtor's previous complaints, Request for a Complete Accounting, and an**

25  **investigation conducted by Debtor.**

26

27

28

It should be noted the alleged Mortgage for Plaintiff/Debtor's homestead property located at 9422 Magnolia Court, Unit 1-B, Ozone Park, NY 11417 was written and in favor of America's Wholesale Lender on November 21, 2005. America's Wholesale Lender purported to be operating as a corporation under the laws of the State of New York on November 21, 2005. According to New York's Secretary of State filings, America's Wholesale Lender filed its Articles of Corporation on December 16, 2008. This is three (3) years and one (1) month after the execution of the subject mortgage.

In the Final Judgement of *BANA, N.A., et al, vs NASH*, Case #59-2011-CA-004389, in the 18th Judicial Circuit, in and for Seminole County, Florida, the Defendant believed America's Wholesale Lender was their lender, as it was stated on their mortgage and note. The Plaintiff's witness testified that it was aware that America's Wholesale Lender was not incorporated before 2008 and was not licensed in the State of Florida. The case was dismissed for lack of standing.

Furthermore, the copy of the alleged true and correct copy of the Note attached to the Proof of Claim 6 displays an undated, blank endorsement allegedly executed by David A. Spector as managing of Countrywide Home Loans, Inc., a New York Corporation doing business as America's Wholesale Lender.

(a) The original mortgage states that America's Wholesale Lender, a New York Corporation was the lender. The name America's Wholesale Lender was not registered as a DBA for Countrywide Home Loans, Inc. according to NY SOS.

(b) The subject mortgage did not state the lender was Countrywide Home Loans, Inc d/b/a America's Wholesale Lender. It clearly states that America's Wholesale Lender is a corporation under the laws of New York on November 11, 2005.

(c) The signature appears to be a stamp and not a live signature.

(d) According to Morgan Stanley's mini-biography of David Spector dated August 8, 2006, he was appointed as Managing Director and Head of the Pan-European Residential Mortgage Business effective September 2006. See link – http://www.morganstanley.com/pub/content/msdotcom/en/press-releases/david-

spector-to-join-morgan-stanley_85.html it further states that he was with Countrywide Financial Corporation in Calabasas, California

According to David A. Spector's own biographies, he was employed by Countrywide Financial Corporation until at least September 2006. This means IF the alleged endorsement were valid, it would have been executed between November 11, 2005 (origination date) and September 2006 (Spector's new employment date). This also means David A. Spector was not employed by Countrywide Home Loans, Inc. or America's Wholesale Lender. All, of which, are separate entities. This questions the validity of the "assignments" dated after this date.

The first alleged assignment is dated December 12, 2011 (recorded February 13, 2012). It purports to "assign" the questionable mortgage from MERS, Inc., as nominee for America's Wholesale Lender to Bank of America, N.A successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP. The alleged assignment has other questions of validity as well.

There are seven alleged heavily redacted recording information assignments attached to the Proof of Claim 6-1 filed by Courtney Williams, Esq. All the assignments are NOT recorded under the Plaintiff/Debtor's name in the Queen's Recorder's office. In many instances, the search was reduced to date filed and assignee's name.

As for the property located at 8710 149th, Apt 5N, Avenue, Howard Beach, NY 11414, the original mortgage was written on April 24, 2007 in favor of Countrywide Home Loans, Inc, a New York Corporation, located at 4500 Park Granda, MS# SVB-314, Calabasas, CA 91302-1613. According to New York's Secretary of State, Countrywide Home Loans, Inc. is still active and even filed a Statement of Information on April 8, 2020 with California's Secretary of State proving this particular entity is still viable. However, there are two distinct different Countrywide Home Loans, Inc. though incorporated in different states with different presidents. One took a path with the Bank

of America/Countrywide merger and one that didn't and is still active. The Plaintiff/Defendant is still

researching these companies to determine which entity is involved with her mortgage.

With that said, the copy of the alleged copy of the Note attached to Proof of Claim 5 purports

to be endorsed by Michele Sjolander, as an executive vice president for Countrywide Home Loans,

Inc., She is a known robo-signer executing documents for different Bank of America related entities

has been deposed several times. In her January 25, 2012 deposition regarding *Kirby v Bank of

American, et al,* (Case #2 09-CV-00182-DCB-JMR) taken in the Southern District of Mississippi

District Court, explains her interactions with the subsidiaries.

The note is dated April 24, 2007 and the BOA and Countrywide merger was on July 1, 2008.

The first assignment is dated October 29, 2009 but effective November 7, 2008 and for all purposes

at first glance that would make sense. However, there is no reason for MERS to act on behalf of

Countrywide Home Loans in an operation that was company wide in the transfer of all assets to

BOA.

There are four alleged **heavily redacted** recording information assignments attached to the

Proof of Claim 5-1 filed by Courtney Williams, Esq. All the assignments are NOT recorded under the

Plaintiff/Debtor's name in the Queen's Recorder's office. In many instances, the search was reduced

to date filed and assignee's name.

Darren Aronow, Esq. and Hanin Shadood, Esq. the Plaintiff/Debtor's attorneys of record as

of the writing of this Adversary complaint failed to properly and timely object to the Proofs of Claim

filed by the alleged creditors, Fay Servicing, LLC and Rushmore Loan Management Services, Inc.

both represented by Courtney Williams, Esq of Gross Polowy.

02/10/2020 – David Van Nostrand emails Plaintiff/Debtor
David Van Nostrand, Paralegal for Aronow Law Firm

| | | |
|---|---|---|
| 1 | | Mr. Van Nostrand introduces himself as the senior processor handling |
| | | Plaintiff/Debtor's modification going forward. Mr. Van Nostrand states, "I work under |
| 2 | | the direct supervision of the underwriter assigned to your file at our firm." |
| | | Mr. Van Nostrand further states, "...most of the work that I will be doing on your file |
| 3 | | requires significant interaction with lenders over the course of each day." |
| 4 | | A list of documents was given to have returned in five business days |
| 5 | 03/06/2020 - | David Van Nostrand emails Plaintiff/Debtor |
| 6 | | |
| | | Among other documents requested is paystubs for Plaintiff/Debtor's sons, Steven and |
| 7 | | Kevin. |
| 8 | 03/10/2020 - | Plaintiff/Debtor emails David Van Nostrand |
| 9 | | Plaintiff/Debtor provides documentation. |
| 10 | 04/17/2020 - | David Van Nostrand emails Plaintiff/Debtor |
| 11 | | Mr. Van Nostrand again requesting paystubs for Steven and Kevin. |
| 12 | 04/27/2020 - | Kathryn Venzia emails Plaintiff/Debtor |
| | | Kathryn Venzia is a law clerk at Aronow Law Firm |
| 13 | | Ms. Venzia is requesting Steven and Kevin execute the Rushmore Application, April |
| 14 | | paystubs for Steven and Kevin, April bank statement and proof of homeowner's |
| | | insurance. |
| 15 | 05/06/2020 - | Kathryn Venzia emails Plaintiff/Debtor |
| 16 | | Ms. Venzia states the loan for the Howard Beach property was "...transferred to |
| | | Rushmore which is the same servicer as Magnolia..." |
| 17 | | According to the Proof of Claim 5 filed on January 8, 2020, Fay Servicing, LLC is the |
| 18 | | servicing agent for U.S. National Bank, NA as Legal Title Trustee for Truman 2016 |
| | | SC6 Title Trust filed by Courtney Williams, Esq of Gross Polowy representing Fay |
| 19 | | Servicing, LLC and not the alleged creditor. On June 12, 2020 a Transfer of Claim |
| 20 | | was filed under Proof of Claim #5 transferring servicing rights from Fay Servicing, |
| | | LLC as registering agent for U.S. Bank NA as Legal Title Trustee for Truman 2016 |
| 21 | | SC6 Title Trust (transferor) to Rushmore Loan Management Services, LLC for U.S. |
| 22 | | Bank NA as Legal Title Trustee for Truman 2016 SC6 Title Trust (transferee) by |
| | | Courtney Williams, Esq. |
| 23 | 07/21/2020 | Kathryn Venzia emails Plaintiff/Debtor |
| 24 | | Ms. Venzia is explaining the trial agreement for the Magnolia property modification |
| | | with the first payment of $2,950.42 being due on August 1, 2020. She states they do |
| 25 | | not know the terms of the of the finalized modified loan until after the trial payments |
| | | are completed. |
| 26 | | She goes on to discuss the Howard Beach property. She states there is still paperwork |
| | | needed, as what was sent was illegible. |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | 07/22/2020 | Plaintiff/Debtor emails Kathryn Venezia |
| 2 | | Plaintiff/Debtor states, "I am feeling overwhelmed and would like to speak to you for some clarity." |
| 3 | 07/22/2020 | Kathryn Venzia emails Plaintiff/Debtor |
| 4 | | Ms. Venzia states in response, "Call me whenever I am a little busy today wrapping up |
| 5 | | things before my leave but I will take your call if I can!" |
| 6 | 08/20/2020 | David Van Nostrand emails Plaintiff/Debtor |
| 7 | | Mr. Van Nostrand is requesting some documentation to complete the application for modification for the Howard Beach property. |
| 8 | 09/04/2020 | David Van Nostrand emails Plaintiff/Debtor |
| 9 | | Mr. Van Nostrand is requesting some documentation to complete the application for modification for the Howard Beach property. |
| 10 | | |
| 11 | 09/05/2020 | Plaintiff/Debtor emails David Van Nostrand |
| 12 | | Plaintiff/Debtor states, "I haven't heard from you all regarding the questions I have asked, also regarding the payments of 4,800 is still the same and also is the 500 00 for |
| 13 | | each property   continues? Patiently waiting to hear from you all let me know when a good time is to speak." |
| 14 | 09/13/2020 | Plaintiff/Debtor emails Michael Albanesi the District Attorney for Queens |
| 15 | | She memorializes that they spoke on September 11, 2020 to set up a meeting. |
| 16 | 09/14/2020 | Michael Albanesi emails Plaintiff/Debtor |
| 17 | | Mr. Albanesi replies he wasn't in the office. |
| 18 | 09/17/2020 | David Van Nostrand emails Plaintiff/Debtor |
| 19 | | Mr. Van Nostrand states, "T address your questions, the income was calculated to show enough income for a better chance at getting approved, to show affordability |
| 20 | | Keep in mind to continue to deposit this income until we receive a decision. The $500 00 monthly pay to the firm will continue until the services are complete. I have |
| 21 | | cc'd Kathryn to this email so she can be updated and to address your concerns about bankruptcy Unfortunately, I cannot answer those questions as I am in the loss |
| 22 | | mitigation department." Mr. Van Nostrand finishes the email requesting more documentation. |
| 23 | | |
| 24 | 09/23/2020 | Plaintiff/Debtor emails David Van Nostrand cc'd Kathryn |
| 25 | | Plaintiff/Debtor states, "I would [appreciate] it very much that I speak with Kathryn regarding the questions I sent so that my children and I can make a decision. Please |
| 26 | | advise availably to speak. |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | 09/28/2020 | Plaintiff/Debtor emails David Van Nostrand cc'd Kathryn |
| 2 | | Plaintiff/Debtor memorializes she called the office on Friday, September 25, 2020 still trying to speak to Kathryn. Plaintiff/Debtor further explains ongoing harassment from |
| 3 | | her HOA and Kathryn was going to send them a letter. |
| 4 | 09/29/2020 | Plaintiff/Debtor emails Michael Albanesi the District Attorney for Queens |
| 5 | | Plaintiff/Debtor writes that she had a medical procedure on September 23 and wasn't able to concentrate until now with her problem in some detail of all those involved |
| 6 | | with her loans instructing her to do many different actions to resolve her issues and yet she never gets them resolved. She states, "I have begun a trial with Rushmore |
| 7 | | however, the amount I am paying is a lot. I asked how they came up with that amount and no one seems to be able to give me the answers again." |
| 8 | | |
| 9 | | She goes on to state, "I have been [misled] and misrepresented by the banks and now...misrepresented by many attorneys. It is over ten years I have been struggling |
| 10 | | with the banks and attorneys..." |
| 11 | 09/30/2020 | David Van Nostrand emails Plaintiff/Debtor |
| 12 | | Mr Van Nostrand replies stating he understands the need to speak to Kathryn and will send an additional email to her. He goes on to request documentation again. |
| 13 | | |
| 14 | 09/30/2020 | Michael Albanesi emails Plaintiff/Debtor |
|    | | Mr. Albanesi replies asking if Plaintiff/Debtor's case is still pending in court? |
| 15 | 10/09/2020 | Plaintiff/Debtor emails David Van Nostrand |
| 16 | | Plaintiff/Debtor explains she is confused with all the conflicting instructions from attorneys. Jessica stated everyone is in forbearance and it is extended to December yet |
| 17 | | she is still paying $4,800.00 (to Trustee) $1,000.00 (to Aronow) for the loan modification for each property plus the trial modification payments of $2,950.42 |
| 18 | | |
| 19 | 10/15/2020 | David Van Nostrand emails Plaintiff/Debtor |
| 20 | | Mr. Van Nostrand explains the modification was denied as a result of the documentation not being met. He states her refusal to comply is forcing a hold by the |
| 21 | | alleged lender (he doesn't state servicer). He says if her sons bank statements and paystubs and other documentation is not forwarded in 10 days he will be forced to |
| 22 | | close her case with the office. |
| 23 | 10/19/2020 | Plaintiff/Debtor emails David Van Nostrand cc'd Kathryn |
| 24 | | Plaintiff/Debtor explains she hasn't heard from Kathryn regarding her questions and feels she is being set up to lose her homes. She was advised not to pay her HOA fees |
| 25 | | when she filed her Chapter 13 case and now being told to pay them by Jessica, another employee of Aronow Law Firm. That she is now receiving a letter from the HOA's |
| 26 | | attorney to pay the fees. |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | 10/20/2020 | Jessica Mazur emails Plaintiff/Debtor |
| 2 | | Jessica Mazur is an employee of Aronow Law Firm as a paralegal |
| | | Mr. Van Nostrand that he has advised in the past that Kathryn is in law school now |
| 3 | | and not working full time. She is no longer assigned to the Plaintiff/Debtor's case. |
| 4 | 10/23/2020 | Plaintiff/Debtor emails Jessica Mazur |
| | | Plaintiff/Debtor explains she feels the amount being paid to Rushmore is too high and |
| 5 | | she doesn't know the interest rate or what else is being added to the payment. She goes |
| | | on to say everything Kathryn told her is different than what is being instructed to do |
| 6 | | now. She states she never gets to speak with Mr. Van Nostrand, only messages and |
| 7 | | emails. She acknowledges she hasn't sent the documentation requested but she has |
| | | many unanswered questions before moving forward. |
| 8 | | |
| 9 | | In another email dated 10/23/2020 that she called Aronow Law office and left |
| | | messages for both Jessica and David. |
| 10 | | |
| 11 | 10/26/2020 | Jessica Muzar emails Plaintiff/Debtor |
| | | She states she will be back in the office on Wednesday |
| 12 | 11/20/2020 | Jessica Muzar emails Plaintiff/Debtor |
| 13 | | Ms. Muzar explains the motion for relief from stay was granted (note: to date of this |
| | | adversary complaint there is no order lifting the stay on the Howard Property) |
| 14 | | |
| 15 | | Ms. Muzar ends the email with "It is VERY important to make these payments for the |
| | | modification. (Regarding the Magnolia property) |
| 16 | | |
| 17 | 12/03/2020 | Jessica Muzar emails Plaintiff/Debtor |
| | | Ms. Muzar explains the confirmation hearing is adjourned until February 1, 2021 and |
| 18 | | " forsee that the Trustee will be filing a motion to dismiss your case. The Trustee |
| | | will be filing this motion to dismiss your case for the following reasons. |
| 19 | | |
| 20 | | 1. Failure to maintain your trustee payments. I see that you stopped paying the trustee |
| | | completely in October 2020.… (NOTE: Plaintiff/Debtor was NOT and had NOT |
| 21 | | stopped the trustee payments. This is a lie and the Plaintiff/Debtor felt threaten and |
| | | bullied.) |
| 22 | | |
| 23 | | 2. Failure to maintain your modification payments to the bank   you didn't make |
| | | your November 2020 trial payment… |
| 24 | | |
| 25 | | …if we don't hear from you, we will be forced to file a Motion to Withdraw…we |
| | | want to assist… but can't without a clear decision from you…" |
| 26 | | |
| 27 | | |
| 28 | | |

12/14/2020    The Plaintiff/Debtor first contacted her attorney with some questions about the validity of the Proofs of Claims on December 14, 2020. She was met with stern reply stating she broke their contract by contacting someone outside of their law firm.

The attorney filed the Motion to Withdraw after the Debtor continually requested answers and explanations about the:

1. Pending modification (terms and requests for financial information from non-parties related to the Debtor) and

2. Questions about the validity of the Proof of Claim (410, 410A, 410S1 and 410S2) documents supporting claims by the alleged creditor.

The Debtor issued a Statement of Charges for fees and costs paid outside of the Bankruptcy Court Proceedings and against the Rules according to the Trustee's Rules Manual pertaining to Accounting Procedures as required to be reported to the Bankruptcy Court Rules of Procedure.

Debtor transmitted her concern of this matter to the "Defendants" demanding for a complete accounting conducted by a Certified Public Accountant for all sums paid to "Defendants" paid both inside and outside the Bankruptcy Trustee's knowledge and reporting schedules and requested an informal hearing on an explanation for all the fees, payments and charges made to/or at the direction of "Defendants" in the amount of $86,500.00 (see exhibits A, B, and C attached).

As of the time of the Filing, Debtor has discovered that the "Defendants" have been disciplined in 3 States (and counting) for conduction of a Loan Modification scam crossing State lines, namely, Maryland, California, and Florida, resulting in a claw back of all monies to the Debtor's either in or out of Bankruptcy.

Debtor's diligence in conducting her own research revealed these shocking details about the Modification Scheme of which Debtor is a victim as follows:

The Maryland example follows:

"The OAH scheduled a hearing for April 30, 2019 at 9.30 a m. at the OAH in Hunt Valley, Maryland. To resolve this matter without a formal hearing, the OCFR and the Respondents have agreed to enter into this Consent Order and Settlement Agreement ("Consent Order") on this 29th day of April, 2019, to provide for the imposition of disciplinary measures which are fair and equitable in these circumstances and which are consistent with the best interest of the people of the State of Maryland. The OCFR and the Respondents agree and stipulate as follows.

1.      At all times relevant, the OCFR has had jurisdiction over the Respondents.

2.      Aronow Law is a law firm that organized in the State of New York in February 2016 and operates out of New York at the principal business address of 20 Crossways Park Drive N, Suite 210. Woodbury, New York 11797 The Maryland State Department of Assessments and Taxation ("SDAT") qualified Aronow Law to conduct business in the State of Maryland effective February 23, 2017; however, on December 4, 2017, SDAT forfeited Aronow Law's qualification to do business in Maryland based on Aronow Law's failure to file a personal property tax return.

3.      Mr Aronow is an attorney barred in the State of New York who engaged in business activities involving Maryland consumers. Mr. Aronow is not, and has never been, licensed to practice law in the State of Maryland. Mr Aronow is the owner, director, officer, manager, and/or agent of Aronow Law and directs or exercises control over the activities and finances of Aronow Law, including Aronow Law's loan modification activities with Maryland consumers.

4.      The Respondents advertised and marketed loan modification services to Maryland residents.

5.      On June 9, 2016, the Respondents entered into a Loan Modification Retainer Agreement with Consumers A in which the Respondents promised to obtain a modification of the mort a e loan for Consumers A's residential property located at — At the time Consumers A contacted the Respondents for assistance, Consumers A were more than 60 days in default on their Maryland residential mortgage loan.

6.      The Respondents led Consumers A to believe that the Respondents would provide homeowners assistance in obtaining a loan modification on Consumers A's behalf with lender MGC Mortgage, Inc. ("MGC Mortgage"). The loan modification agreement required Consumers A to pay an upfront monthly fee of $800 before the Respondents would provide the mortgage assistance relief services. Ultimately, Consumers A paid the Respondents upfront fees totaling $1,600.

The Respondents did not obtain a loan modification for Consumers A. On or about July 15, 2016, MGC Mortgage initiated foreclosure proceedings against the —

property and on September 6, 2016; MGC Mortgage informed Respondents by letter that MGC Mortgage initiated foreclosure proceedings against Consumers A.

8.    The OCFR's investigation revealed that from March 2016 through January 2017, approximately 43 Maryland consumers ("Consumers A-QQ") see Exhibit A attached hereto, executed agreements with the Respondents, and collected $122,661 in upfront fees from Consumers A-QQ.

9.    On or about February 28, 2017, Respondents refunded the upfront fees paid by Consumers A in the amount of $1, 600

10.    Pursuant to the Annotated Code of Maryland Real Property Article Title 7, Subtitle 3 (Protection of Homeowners in Foreclosure Act, hereinafter "PHIFA"), the Commissioner may enforce the provisions of PHIFA as they apply to those individuals entering into agreements with Maryland homeowners in default or in foreclosure to provide residential mortgage loan modification services pertaining to homeowner-occupied Maryland residential real property, or otherwise contracting to provide services to stave off foreclosure on Maryland residential mortgage loans in default. The Respondents collected the upfront fees from Consumers A-QQ in violation of RP 7-307(2) as well as 12 C.F.R. and 12 C.F.R. 1015.5(a)(b), under an executed written agreement that failed to incorporate the offer of mortgage as assistant relief between Maryland consumers and their lenders or any other servicers of the loans.

11.    Further, the Respondents collected the upfront fees pursuant to an executed written agreement between Consumers A-QQ and the Respondents failed to incorporate the offer of mortgage assistance relief between Consumers A-QQ and their lenders or any other servicers of the loans in violation of the Maryland Mortgage Assistance Relief Services Act ("MARS Act"), Md. Code Ann., Real Prop. Art., Title 7, Subtitle 5.

12, The MARS Act requires that mortgage assistance relief service providers comply with the federal Mortgage Assistance Relief Services Rule in 12 C.F.R. Part 1015 ("Regulation O"). Specifically, RP 7-502 provides: "A mortgage assistance relief service provider providing assistance relief service in connection with a dwelling in the State that does not comply with 12 C.F.R. 1015.1 through 1015.11 and any subsequent revision of those regulations is in violation of this subtitle."

13.    Pursuant to RP 7-501(d) and (e) of the MARS Act, "mortgage assistance relief service" has the same meaning stated in 12 C.F.R. 1015.2 and any subsequent revision of that federal regulation and "mortgage assistance relief service provider" has the same meaning stated in 12 C.F.R. 1015.2 and any subsequent revision of that regulation. Further, RP S 7-501 incorporates the meanings of other terms stated in 12 C.F.R. 1015.2 to the extent those terms are used to establish the meaning of "mortgage assistance relief service provider."

14.    12 C.F.R. 1015.2 defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service," excluding "the dwelling loan holder, or any agent or contract of such individual or entity," and "the servicer of a dwelling loan, or any agent or contractor of such individual or entity."

15.    12 C.F.R. §1015.2 defines "mortgage assistance relief service" to mean:

any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

(1)    Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession.

(2)    Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees.

(3)    Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan.

(4)    Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may:

　　　　(i)    Cure his or her default on a dwelling loan,
　　　　(ii)    Reinstate his or her dwelling loan,
　　　　(iii)    Redeem a dwelling, or
　　　　(iv)    Exercise any right to reinstate a dwelling loan or redeem a dwelling.

(5)    Obtaining any waiver of an acceleration clause or balloon payment contained in any promissOlY note or contract secured by any dwelling; or

(6)    Negotiating, obtaining, or arranging:

　　　　(i)    A short sale of a dwelling,
　　　　(ii)    A deed-in-lieu of foreclosure, or
　　　　(iii)    Any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

16.    Under the pertinent federal regulations, incorporated into Maryland law through RP 7-501 and 502 of the MARS Act, a "mortgage assistance relief service provider" includes any person offering, providing, or presenting that they can provide loan modification services for consideration.

17.    Pursuant to 12 C.F.R. S 1015.5(a), mortgage assistance relief service providers are prohibited from collecting any upfront or other fees from consumers prior to the consumers entering into a written agreement with their lender or servicer that incorporates the offer of mortgage assistance relief.

18.    Pursuant to RP 7-319.1 and 7-506, the OCFR may enforce the provisions of PHIFA and the MARS Act by, among other things, conducting investigations and issuing orders in accordance with the Commissioner's general powers under Md. Code Ann., Financial Institutions Article ("FI") 2-113, 2-116, which include imposing civil penalties of up to $1,000 for the first violation of the MARS Act, and up to $5,000 for each subsequent violation. The OCFR may also require persons to take affirmative action to correct a violation, including restitution of money or property to individuals harmed by the violation.

19.    The Respondents do not admit or deny that by their acts and omissions described above they have violated PHIFA and the MARS Act and they are subject to the OCFR's general powers set forth in FI 2-113 to 2-116 but desire to resolve this matter without a formal administrative hearing.

20.    The Respondents, by, entering into this Consent Order expressly waive the right to an administrative hearing before the OAH on the charges, the making of Findings of Fact and Conclusions of Law by an Administrative Law Judge, any and all further proceedings before the OCFR and any rights to appeal to a court of competent jurisdiction from this Consent Order. Respondents acknowledge that they have had an opportunity to consult with independent legal counsel in connection with the waiver of rights and with the negotiation and execution of this Consent Order, that Respondents have consulted with independent legal counsel, and Respondents enter into this Consent Order knowingly, willingly, and voluntarily.

21.    Respondents represent and warrant that they are currently in compliance with PHIFA and the MARS Act and all other laws, regulations, and rules governing loan modification activities, loss mitigation services, foreclosure consulting, or other similar services with Maryland consumers, and that Respondents will continue to act in compliance at all future times. Respondents acknowledge that the OCFR is relying upon Respondents' representations and that this Consent Order may be revoked and the OCFR may pursue any and all remedies available under the law against Respondents if the OCFR finds that Respondents knowingly or willfully withheld information from the OCFR.

22.    The OCFR agrees to accept this Consent Order as the full and final resolution of Case No. CFR-FY2017-0003 and agrees not to pursue an enforcement action based on the alleged violations cited herein, unless the Respondents fail to perform their obligations under this Consent Order.

23.    The OCFR and Respondents further agree that this Consent Order is admissible and shall be binding and enforceable in a court of competent jurisdiction by the OCFR should the Respondents fail to perform their obligations.

24.    The OCFR and Respondents further acknowledge that this Consent Order does not in any way relate to, impact, or otherwise affect the legal rights of, or preclude the OCFR from bringing or continuing actions against persons not Parties to this Consent Order.

BASED ON THE STIPULATIONS AND AGREEMENTS SET FORTH ABOVE IT IS, BY THE OFFICE OF THE COMMISSIONER OF FINANCIAL REGULATION, HEREBY:

ORDERED that Respondents shall adhere to all terms of this Consent Order; and it is,

ORDERED that the Respondents shall pay restitution in the total amount of $122,661.50 to Maryland Consumers B-QQ. If Respondents provide documentation within three days of this Consent Order demonstrating that any consumer accepted a beneficial offer of mortgage assistance relief, the Commissioner may in the Commissioner's sole discretion reduce the restitution amount due and owing by Respondents. In making this determination of "beneficial" offer, the Commissioner will evaluate all relevant information involving the facts and circumstances surrounding the offer of Mortgage assistance relief, including the consumer's financial status and it is, further,

ORDERED that upon receipt of the documentation, the Commissioner will notify the Respondents in writing of any reduction to the restitution due and owing ("Restitution Reduction Notification Letter") within fourteen (14) days thereafter. The Restitution Reduction Notification Letter shall be incorporated into this Consent Order as fully set forth herein, and it is, further,

ORDERED that within nine (9) months of the Restitution Reduction Notification Letter, Respondents shall mail a check for the amount of money to be refunded to each consumer via First Class U.S. Mail, to each affected consumer's last known address, or to an updated address as can be identified through customary address verification means. Each refund shall be accompanied by a letter indicating that the refund is being issued pursuant to a Consent Order issued by the Deputy Commissioner, and that the Consent Order does not in away way affect the consumer's legal rights. Within nine (9) months of the date the Restitution Reduction Notification Letter, the Respondents shall send checks to each affected consumer. Within twelve (12) months of the date the Restitution Reduction Notification Letter, the Respondents shall furnish evidence to the OCFR that the refunds were tendered to each affected consumer in the agreed amount by providing a copy of the front and back of the cancelled check for each refund payment. The Respondents shall not seek a release from Consumers B-QQ in conjunction with these refunds, and it is further:

ORDERED that if any refund payment checks mailed by the Respondents to the Maryland consumers in accordance with this Consent Order and the Restitution Reduction Notification Letter are either not cashed or are returned to the Respondents as non-deliverable (collectively, the "Undeliverable Refunds"), the Respondents shall transfer any Undeliverable Refunds payment checks within twelve (12) months from the date of execution of this Consent Order to the custody of the Comptroller of Maryland as follows: The Respondents will stop payment on such Undeliverable Refunds payment checks, and shall pay the total amount of all Undeliverable Refunds in the form of a single check made payable to the "Comptroller of Maryland," which shall be submitted to the OCFR, and accompanied by a spreadsheet in both hard copy and electronic format that contains the name of the consumer, the amount of upfront fees the Respondents collected from the consumers, the social security number of the consumer (if known), the date of birth of the consumer (if known), the date on which each refund check was mailed, and an indication of which refund checks were cashed, and which refund checks were either not cashed or were returned to the Respondents as Undeliverable Refunds. Such action on the part of the Respondents shall relieve the Respondents of any further obligation to make refunds to these consumers under this Consent Order; and it is further

ORDERED that the Respondents shall pay a total civil money penalty of $ 10,000 (Ten Thousand Dollars) in the form of a Cashier's Check or Money Order made payable to the Commissioner of Financial Regulation, to be delivered to the OCFR, in c/o Sophie Asike, Assistant Attorney General, Department of Labor, Licensing and Regulation, 500 N. Calvert Street, Suite 406, Baltimore, Maryland 21202 no later than January 29, 2020; and it is further:

ORDERED that the Respondents shall pay an investigative fee of $2,170 (Two Thousand One Hundred Seventy Dollars) in the form of a Cashier's Check or Money Order made payable to the Commissioner of Financial Regulation, to be delivered to the OCFR, in c/o Sophie Asike, Assistant Attorney General, Department of Labor, Licensing and Regulation, 500 N. Calvert Street, Suite 406, Baltimore, Maryland 21202 no later than January 29, 2020.

Furthermore, in less than 48 hours prior to the filing of this complaint the Plaintiff received a letter from the acting Chapter 13 Trustee, Marianne DeRosa, dated January 27, 2021 (Doc #73) advising, "...of the adjournment of the Hearing on Confirmation and Trustee's Motion to Dismiss which were schedule February 1st, 2021 at 10:00 a.m. which have been adjourned to February 2nd, 2021 at 10:30 a.m." The Plaintiff has never been noticed of a Trustee's Motion to Dismiss nor has one been filed with the court.

Plaintiff has been forced to file this Adversary Complaint in opposition to the alleged Trustee's Motion to Dismiss. Plaintiff feels intimidated and threatened by the Trustee in response to her Opposition to the debtor's Attorney's Motion to Withdraw filed on January 12, 2021 (Doc #72). The Plaintiff feels her Attorney's Motion to Withdraw is in retaliation for the debtor's multiple requests for answers to her acceptable questions about her case, pending modification and the request of irregular documents for said modification. The Plaintiff feels her assets are threatened by this intimidation and retaliation by her own attorney and Trustee.

3. **Cause of Action for Replevin of Monies Paid to all Defendants.**

AUTOMATIC DEBIT PAYMENTS TO ARONOW LAW, PC
ATTORNEY FEES FOR LOAN MODIFICATIONS OUTSIDE THE BANKRUPTCY

| Date Paid | Amount Paid |
|-----------|-------------|
| 01/22/2020 | $500.00 |
| 01/22/2020 | $500.00 |
| 02/24/2020 | $500.00 |
| 02/24/2020 | $500.00 |
| 03/27/2020 | $500.00 |
| 03/27/2020 | $500.00 |
| 04/23/2020 | $500.00 |
| 04/23/2020 | $500.00 |
| 05/26/2020 | $500.00 |
| 05/26/2020 | $500.00 |
| 06/26/2020 | $500.00 |
| 06/26/2020 | $500.00 |
| 07/24/2020 | $500.00 |
| 07/24/2020 | $500.00 |
| 08/26/2020 | $500.00 |
| 08/26/2020 | $500.00 |
| 09/25/2020 | $500.00 |
| 09/25/2020 | $500.00 |
| 10/26/2020 | $500.00 |
| 10/26/2020 | $500.00 |
| | |
| **Total to Date** | $11,000.00 |

## PAYMENTS TO RUSHMORE LOAN MGMT SERVICES, LLC

| Date Paid | Amount Paid |
|---|---|
| 08/14/2020 | $2,958.42 |
| 08/14/2020 | $2,958.42 |
|  |  |
| Total to date | $5,916.84 |

### TRUSTEE PAYMENTS

| Date Paid | Amount Paid |
|---|---|
| 12/01/2019 | $4,800.00 |
|  | *This payment was instructed to be mailed to Trustee's TN address by Ilanit Shadout at Aronow's office on December 2, 2019 |
| 12/19/2019 | $4,800.00 |
|  | *This payment was the beginning of the ACH automatic payments to the Trustee directly. |
| 01/21/2020 | $4,800.00 |
| 02/19/2020 | $4,800.00 |
| 03/19/2020 | $4,800.00 |
| 04/20/2020 | $4,800.00 |
| 05/19/2020 | $4,800.00 |
| 06/19/2020 | $4,800.00 |
| 07/20/2020 | $4,800.00 |
| 08/19/2020 | $4,800.00 |
| 09/21/2020 | $4,800.00 |
| 10/19/2020 | $4,800.00 |
| 11/19/2020 | $4,800.00 |
| 12/19/2020 | $4,800.00 |
| Total to date | $67,200.00 |

The Plaintiff has discovered that Aronow, Rushmore Loan Management Services, Inc. and Fay Servicing, LLC have taken funds not reported as required, on the Trustee Quarterly Report, and further, none are the creditors for the real properties listed in the underlying bankruptcy.

The Plaintiff is opposing the Trustee's Motion to Dismiss until:

1. The validity of the liens can be determined, the requested accounting has been completed

2. The clawback of the funds in the amount of $84,116.84 has been returned.

3. A complete Accounting of Plaintiff's money has been ascertained by a New York licensed Certified Public Accountant has been made.

### 4.  Cause of Action for WIRE FRAUD

All of the Defendant's accomplish their Mortgage Modification Scheme, in concert, using the internet, email, and phone electronic equipment at all times.

09/17/2020    David Van Nostrand emails Plaintiff/Debtor
Mr. Van Nostrand states, "T address your questions, the income was calculated to show enough income for a better chance at getting approved, to show affordability. Keep in mind to continue to deposit this income until we receive a decision. The $500.00 monthly pay to the firm will continue until the services are complete. I have cc'd Kathryn to this email so she can be updated and to address your concerns about bankruptcy. Unfortunately, I cannot answer those questions as I am in the loss mitigation department." Mr. Van Nostrand finishes the email requesting more documentation.

### 5.  Cause of Action for an Emergency Injunction against the Trustee to Remove her Motion to Dismiss Debtor's case to avoid irreparable injury and harm to the Debtor.

Debtor will be irreparably harmed by the Court allowing the Trustee to move forward with her Motion to Dismiss and her Attorney Darren Aronow's Motion to withdraw before such time that Debtor's Funds have been returned and other Relief Demanded in the amount of $2,500,000.00

### IN CONCLUSION

The Plaintiff requests permission for leave to amend this Complaint as Plaintiff had only 24 hours to prepare this Adversary Complaint after Notice that the Trustee made it's own Motion to Dismiss that is not on the Court Docket, and yet, is set for hearing on Feb 2, 2021.

Signed Ashmeen Modikhan Plaintiff 01/29/2021

1

# CERTIFICATE OF SERVICE

2

I CERTIFY that U.S. Regular Mail mailed a copy of the foregoing Adversary Complaint

3

dated on this day of 29ᵗʰ of January, 2021 to:

4

5

Darren Aronow, Esq.
Debtor's Attorney

6

7600 Jericho Turnpike, Suite 115
Woodbury, NY 11797

7

8

Darren Aronow, Esq
20 Crossway Park Drive N., 210

9

Woodbury, NY 11797

10

Hanin Shadood, Esq.

11

Debtor's attorney of record
7600 Jericho Turnpike, Suite 115

12

Woodbury, NY 11797

13

Hanin Shadood, Esq

14

Employee of Marianne DeRosa, Chapter 13 Trustee
Office of the Chapter 13 Trustee

15

100 Jericho Quadrangle, Ste 127
Jericho, NY 11753

16

17

Courtney R. Williams, Esq.,
Attorney for the alleged creditors Fay Servings and Rushmore Loan Management Services, Inc

18

Gross Polowy, LLC
1775 Wehrle Drive, Suite 100

19

Williamsville, NY 14221

20

Clerk of the United States Bankruptcy Court

21

Eastern District of New York
Conrad B. Duberstein U.S. Courthouse

22

271-C Cadman Plaza East, Suite 1595

23

Brooklyn, NY 11201-1800

24

Marianne DeRosa, Chapter 13 Trustee

25

Office of the Chapter 13 Trustee
100 Jericho Quadrangle, Ste 127

26

Jericho, NY 11753

27

28

1  Office of the United States Trustee
   Eastern District of NY (Brooklyn Office)
2  U.S. Federal Office Building
3  201 Varick Street. Suite 1006, New York. NY 10014

4  Jeffrey C. Chancas
   Borah, Goldstein. Altschuler. Nahins & Goidel, P.C.
5  377 Broadway
   New York, NY 10013-3993
6

7  Rushmore Loan Management Services. LLC
   15480 Laguna Canyon Road
8  Irvine. CA 92618

9  Fay Servicing
10 P.O. Box 809441
   Chicago, IL 60680

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I CERTIFY that a copy of the foregoing Adversary Complaint dated 29th day of January 2021

was mailed by U.S. Regular Mail on this 1st day of February, 2021 to:

Hanin Shadood, Esq.
Debtor's Attorney of Record
760 Jericho Turnpike, Suite 115
Woodbury, NY 11797
Office: (516) 762-6700
E-mail: Hanin.S@aronowlaw.com

Hanin Shadood, Esq.
Employee of Marianne De Rosa, Chapter 13 Trustee
Office of the Chapter 13 Trustee
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753
Office: (516) 622-1340
E-mail: Hanins@ch13mdr.com