UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

ASHMEEN MODIKHAN,                                          Chapter 7
                                                          Case No.: 19-46591-jmm

                            Debtor.
-------------------------------------------------------------X
ASHMEEN MODIKHAN,

                            Plaintiff,

            v.

DARROW ARONOW, ESQ., HANIN R. SHADOOD,                    Adv. Pro. No: 21-01009-jmm
COURTNEY R. WILLIAMS, ESQ., FAY SERVICING
LLC, RUSHMORE LOAN MANAGEMENT SERVICES,
INC., MARIANNE DEROSA, THE UNITED STATES
OF AMERICA, DOES 1-100 INCLUSIVE

                            Defendants.
-------------------------------------------------------------X


**<u>MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS</u>**


Appearances:

**Ashmeen Modikhan**
94-22 Magnolia Court, Unit 1B
Ozone Park, NY 11753
*Pro Se Debtor*

**Courtney R. Williams**
Gross Polowy, LLC
1775 Wehrle Drive, Ste 100
Williamsville, NY 14221
*Pro Se Defendant*

**Marianne DeRosa**
Office of the Chapter 13 Trustee
100 Jericho Quadrangle, Ste 127
Jericho, NY 11753
*Pro Se Defendant*

**Darren Aronow**
Aronow Law Firm P.C.
7600 Jericho Turnpike, Ste 115
Woodbury, NY 11797
*Pro Se Defendant*

**Steven Amshen**
Petroff Amshen, LLP
1795 Coney Island Ave, 3rd Floor
Brooklyn, NY 11230
*Counsel for Hanin Shadood*

**Andrea M Roberts**
Blank Rome LLP
1271 Avenue of Americas
New York, NY 10174
*Counsel for Fay Servicing, LLC*

**Krista M Preuss**
Krista M. Preuss, Chapter 13 Trustee
100 Jericho Quadrangle, Ste 127
Jericho, NY 11753
*Pro Se Defendant*

**Jonathan M. Robbin**
J. Robbin Law PLLC
200 Business Park Drive, Ste 103
Armonk, NY 10504
*Counsel for Rushmore Loan Management Services, Inc.*

## INTRODUCTION

In this Adversary Proceeding, Plaintiff is suing the servicers for the mortgages on the Plaintiff's two real properties, their counsel, the chapter 13 trustee, and the Plaintiff's former bankruptcy attorneys.  Plaintiff alleges the Defendants are perpetrating a mortgage modification scheme and asserts claims for fraud, wire fraud, negligent misrepresentation, and replevin. Plaintiff also asserts breach of fiduciary duty claims against the chapter 13 trustee and legal malpractice claims against her attorneys.  Plaintiff seeks injunctive relief as well as money damages.  Each Defendant has moved to dismiss the plaintiff's claims.

For the reasons set forth below, the motions to dismiss filed by the loan servicers, their counsel, the chapter 13 trustee, and Hanin R. Shadood (one of Plaintiff's former attorneys) are granted.  The motion to dismiss filed by Darren Aronow (one of Plaintiff's former attorneys) is granted in part.  All Plaintiff's claims against Darren Aronow are dismissed except for Plaintiff's claim for legal malpractice.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding and these contested matters under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012.

## BACKGROUND

### Plaintiff's Prior Bankruptcy Cases

On June 28, 2012, the Plaintiff commenced a case under chapter 7 of the Bankruptcy Code (the "First Bankruptcy Case") by filing a voluntary petition for relief with the Clerk of this

Court.  (*In re Modikhan*, Case No. 12-44750 (Bankr. E.D.N.Y)).  The Plaintiff was represented by counsel in the First Bankruptcy Case.  (Bankruptcy 12-44750, ECF No. 1.)  On October 10, 2012, the Plaintiff was granted a discharge.  (Bankruptcy 12-44750, ECF No. 12.)

On July 9, 2019, the Plaintiff, proceeding *pro se*, commenced a second chapter 7 case by filing a petition for relief with the Clerk of this Court.  (*In re Modikhan*, Case No. 19-44172 (Bankr. E.D.N.Y)).  The Plaintiff did not file schedules of assets and liabilities, a statement of financial affairs or other documents required under the Bankruptcy Code.  (Bankruptcy 19-44172, ECF No. 16.)  As a result, on September 11, 2019, the Court entered an order directing the Clerk's office to dismiss the case.  (Bankruptcy 19-44172, ECF No. 18.)  That bankruptcy case was closed on September 27, 2019.  (Bankruptcy 19-44172, ECF No. 21.)

**The Current Bankruptcy Case**

On October 31, 2019, Plaintiff, proceeding *pro se*, commenced a third bankruptcy case by filing a voluntary petition for relief under chapter 13 of the Bankruptcy Code.  (*In re Modikhan*, Case No. 19-46591 (Bankr. E.D.N.Y)).  The case was assigned to the Honorable Elizabeth S. Stong, United States Bankruptcy Judge.  Marianne DeRosa (the "Chapter 13 Trustee") was appointed as the chapter 13 trustee.  January 9, 2020 was set as the deadline for creditors to file proofs of claim.  (Bankruptcy 19-46591, ECF No. 7.)

On November 21, 2019, Aronow Law Firm P.C. ("Law PC") filed a notice of appearance as Plaintiff's counsel.  (Bankruptcy 19-46591, ECF No. 12.)  Defendant Darren Aronow ("Aronow") is a partner or member of Law PC and Defendant Hanin R. Shadood ("Shadood") was an associate attorney with Law PC.  (*Id.*)

On that same date, Law PC filed the Plaintiff's bankruptcy schedules and statement of financial affairs and other documents required to be filed in a chapter 13 bankruptcy case.

(Bankruptcy 19-46591, ECF Nos. 13, 14, 15, 16, 17.)  Plaintiff's schedules listed Fay Servicing LLC ("Fay") as holding a $381,916.48 claim secured by a mortgage on 87-10 149th Avenue, Apt. 5N, Howard Beach, New York (the "Investment Property") and Rushmore Loan Management Services ("Rushmore") as holding a $731,042.20 claim secured by a mortgage on 94-22 Magnolia Court, Unit 1B, Ozone Park, New York (the "Residential Property").  (Bankruptcy 19-46591, Sched. D, ECF No. 13.)  Also, on November 21, 2019, Law PC filed a request for Plaintiff to enter the court's loss mitigation program respecting the Residential Property mortgage.  (Bankruptcy 19-46591, ECF Nos. 19, 21, 18.)  Additionally, on that date, Law PC filed its Disclosure of Compensation of Attorney for Debtor(s).  (Bankruptcy 19-46591, ECF No. 16.)  The disclosure represents that Law PC agreed to accept $5,000 for certain services, including analysis and bankruptcy advice, preparation of the bankruptcy petition and schedules, appearances at the meeting of creditors and confirmation hearing, and negotiations with secured creditors.  (*Id*. at ¶ 5.)  The disclosure acknowledges receipt of a $2,065 retainer.  (*Id*. at ¶ 1.)

On November 27, 2019, Law PC filed the Plaintiff's proposed chapter 13 plan. (Bankruptcy 19-46591, ECF No. 32.)  Section 3.3 addresses treatment of the debt secured by the Residential Property mortgage and states:

> All arrears, including all past due payments, late charges, escrow deficiency, legal fees and other expenses due to the mortgagee totaling $332,911.27, may be capitalized pursuant to a loan modification. The new principal balance, including capitalized arrears will be $718,468.65, and will be paid at 3% interest amortized over 40 years with an estimated monthly payment of $3,216.94 including interest and escrow of $644.93.  The estimated monthly payment shall be paid directly to the trustee while loss mitigation is pending and until such time as the debtor(s) has commenced payment under a trial loan modification.  *Contemporaneous with the commencement of a trial loan modification, the debtor(s) will amend the Chapter 13 Plan and Schedule J to reflect the terms of the trial agreement, including the direct payment to the secured creditor going forward by the debtor(s).*

(*Id*. (emphasis added.))  Section 9.1 addresses treatment of the debt secured by the Investment

Property mortgage and states:

> All arrears, including all past due payments, late charges, escrow deficiency, legal fees and other expenses due to the mortgagee totaling $181,774.76, may be capitalized pursuant to a loan modification. The new principal balance, including capitalized arrears will be $356,916.48, and will be paid at 3% interest amortized over 40 years with an estimated monthly payment of $1,485.77 including interest and escrow of $208.06. The estimated monthly payment shall be paid directly to the trustee while loss mitigation is pending and until such time as the debtor(s) has commenced payment under a trial loan modification. *Contemporaneous with the commencement of a trial loan modification, the debtor(s) will amend the Chapter 13 Plan and Schedule J to reflect the terms of the trial agreement, including the direct payment to the secured creditor going forward by the debtor(s).*

(*Id.* (emphasis added.))  The chapter 13 plan provides for the $2,935 owed to Law PC for legal fees to be treated as an administrative expense to be paid through the chapter 13 plan. (Bankruptcy 19-46591, ECF No. 32 at 4.3).  The chapter 13 plan provides for general unsecured claims to be paid in full.  (*Id.* at Part 5.)  The plan provides for 60 monthly payments of $4,800.00.  (*Id.* at Part 2.)

Four months later, in February 2020, Shadood left Law PC to work for the Chapter 13 Trustee.  (Bankruptcy 19-46591, Feb. 2, 2020, Hr'g Tr. 12: 7-9, ECF No. 142.)

On December 30, 2020, Law PC moved to withdraw as Plaintiff's counsel in the bankruptcy case alleging that Law PC and the Plaintiff disagreed on the direction of the bankruptcy case, Plaintiff believed Law PC was conspiring with Rushmore, and Plaintiff would no longer communicate with counsel.  (Bankruptcy 19-46591, ECF No. 71 at ¶11.)  After a February 2, 2021 hearing, the Court entered an order granting Law PC's request to be relieved as counsel.  (Bankruptcy 19-46591, ECF No. 92.)

On March 1, 2021, Plaintiff filed a motion to recuse the Judge then assigned to the bankruptcy case. (Bankruptcy 19-46591, ECF No. 103.)  On May 14, 2021, that Judge entered an

order recusing herself (Bankruptcy 19-46591, ECF No. 146) and this bankruptcy case was reassigned to the undersigned.  (Bankruptcy 19-46591, ECF No. 148.)

Also, on March 1, 2021, the Plaintiff filed a Notice of Voluntary Conversion resulting in the immediate conversion of the case from chapter 13 to chapter 7.  (Bankruptcy 19-46591, ECF No. 106.)

**The Lift-Stay Motion and Objection to the Investment Prop. Proof of Claim**

On January 8, 2020, Gross Polowy, LLC in its capacity as "attorney for creditor" filed a proof of claim, Claim Number 5-1 (the "Investment Prop. Proof of Claim").  The claim identifies U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust ("Truman") as the creditor and asserts a $329,809.55 claim for money loaned, secured by a mortgage on the Investment Property.  The Investment Prop. Proof of Claim is signed by Defendant Courtney Williams ("Williams").

On January 27, 2020, Fay, as servicing agent for Truman, by its counsel Gross Polowy, LLC, filed a motion (Bankruptcy 19-46591, ECF No. 49) (the "Lift-Stay Motion") to terminate the automatic stay as to the Investment Property for cause under Bankruptcy Code section 362(d)(1) based on the Plaintiff's failure to remit post-petition mortgage payments.  (Lift-Stay Motion ¶¶ 4, 7).

On February 12, 2021, Plaintiff filed her objection to the Lift-Stay Motion (the "Objection").  (Bankruptcy 19-46591, ECF No. 89.)  Although Plaintiff admitted she was not making post-petition payments, she argued the Lift-Stay Motion should be denied and the Investment Prop. Proof of Claim disallowed for the following reasons:

- The debt owed to Truman was discharged in the First Bankruptcy Case.  (*Id*. at 3.)

- The Investment Prop. Proof of Claim is defective because it does not include Official Bankruptcy Forms 410s1 or s2 and was not timely filed.  (*Id*. at 3, 4.)

- Truman is not entitled to payment because Truman has not evidenced it owns the underlying promissory note (*Id*. at 5) and the copy of the note attached to the claim is not a copy of the original note. (*Id*.)

- The note and mortgage were not properly assigned to Truman and neither Truman nor Fay has standing to enforce the mortgage or note or has a beneficial interest in the mortgage or note. (*Id*. at 7-12.)  In this connection, Plaintiff claimed the endorsement on the note is ineffective because it appears to be a stamped signature instead of a live signature, the signatory is a "well-known unauthorized person" and "robo-signor," and there is "no evidence the signatory had personal knowledge or authority to endorse the note." (*Id*. at 7.)

- Plaintiff also claimed the redactions in the mortgage assignments and cover sheets filed with the Investment Prop. Proof of Claim indicate an attempt by the creditor to conceal something. (*Id*. at 8-10.)  The Plaintiff also claimed other aspects of the mortgage assignments render them ineffective. (*Id*.)

**The Objection to the Residential Prop. Proof of Claim**

On January 9, 2020, Gross Polowy, LLC in its capacity as "attorney for secured creditor" filed a proof of claim, Claim Number 6-1 (the "Residential Prop. Proof of Claim" and together with the Investment Prop. Proof of Claim, the "Proofs of Claim").  The claim identifies the creditor as Tiki Series IV Trust ("Tiki") and asserts a $689,154.49 claim for money loaned, secured by a mortgage on the Residential Property.

On February 12, 2021, Plaintiff filed her objection to the Residential Prop. Proof of Claim (the "Residential Prop Claim Objection")[1] requesting the claim be disallowed in full and expunged for reasons similar to those stated in her objection to the Investment Prop.  Proof of Claim.  (Bankruptcy 19-46591, ECF No. 90.)  The Plaintiff's specific objections are summarized as follows:

- The claims against her were discharged in the First Bankruptcy Case.  (*Id*. at ¶ 2.)

---

[1] The Plaintiff filed numerous pleadings in connection with her objections to the Proofs of Claim and the Lift-Stay Motion, many of which combine objections to the two Proofs of Claim and the Lift-Stay Motion into one pleading.  The Memorandum and Decision digests those pleadings.  (*See* Bankruptcy 19-46591, ECF No. 264.) Hereinafter, the Plaintiff's pleadings objecting to the Proofs of Claim and the Lift-Stay Motion are collectively referred to as the "Claim Objections."

- The creditor failed to prove ownership of the promissory note. (*Id.* at ¶ 30.)

- There is no privity between the Plaintiff and Tiki or its agents.  (*Id.* at ¶ 5.)

- The lender on the promissory note, Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender, was incorporated in New York in 2008, years after the date of the note and mortgage.  (*Id.* at ¶ 15.)  Relatedly, the Plaintiff argued there are several Countrywide entities and Tiki cannot establish the mortgage assignments emanate from the correct Countrywide entity. (*Id.* at ¶¶ 11, 20-33.)

- Fannie Mae is the investor in the mortgage, not Tiki or its predecessors.  (*Id.* at ¶ 6.)

- Tiki and Rushmore committed fraud by filing the Residential Prop. Proof of Claim because they are not creditors.  (*Id.* at ¶¶ 3, 4, 31, 32.)

- The mortgage assignments are defective and fraudulent for various reasons.  For example, Rushmore's address on the Notice of Transfer is also an address for Balbec Capital, LP, another entity involved in purchasing mortgages.  (*Id.* at ¶ 33.)

- The promissory note endorsement is ineffective.  David A. Spector, who endorsed the note, was employed by Countrywide Financial Corporation and not Countrywide Home Loans, Inc. or America's Wholesale Lender and lacked authority to endorse the note, and his signature is a stamped signature instead of a "wet ink" original.  (*Id.* at ¶¶ 18-30.)

- Rushmore's counsel has not provided proof that she is retained by Tiki.  (*Id.* at ¶ 33.)

In addition to seeking disallowance of the proof of claim, the Plaintiff requested an award of $10,000 in costs.

On March 11, 2021, Rushmore filed a "Transfer of Claim Other Than For Security" disclosing that Tiki transferred the Residential Prop. Proof of Claim to U.S. Bank Trust National Association, as Trustee of Dwelling Series IV Trust ("Dwelling") (the "Notice of Transfer"). (Bankruptcy 19-46591, ECF No. 113.)  Rushmore also filed copies of certain mortgage assignments, including one from Tiki to Dwelling.  (Bankruptcy 19-46591, ECF Nos. 114, 115.)

On April 13, 2021, Plaintiff filed an objection to the Notice of Transfer and a request that the Court strike the exhibits to the Notice of Transfer.  (Bankruptcy 19-46591, ECF No. 128.)

Plaintiff claimed the exhibits to the Notice of Transfer must be stricken because they are fraudulent, the transfer is an improper attempt to cure defects in the Residential Prop. Proof of Claim, and the Notice of Transfer – filed fourteen months after the bar date – is an attempt to file a claim after the bar date.  (*Id*. at 2.)

**The Decision on the Claim Objections and Lift-Stay Motion**

On November 15, 2021, the Court rendered a decision overruling all Plaintiff's objections, allowing the Proofs of Claim, and granting the Lift-Stay Motion.  (Bankruptcy 19-46591, ECF No. 264.)

In summary, the Court held that Truman, Dwelling and their servicers had standing to file proofs of claim and seek relief from stay because they had possession of the promissory notes.[2]  Plaintiff's allegations of fraud or defects in connection with the mortgage assignments were irrelevant because, as a matter of law, standing to prosecute a mortgage can be based on possession of the promissory note as opposed to the chain of mortgage assignments.  Further, Plaintiff's complaints regarding the mortgage assignments did not evidence any type of fraud.

The Court rejected Plaintiff's argument that the Proofs of Claim were fraudulent because the underlying debts were discharged in the First Bankruptcy Case based on the United States Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991), which held that a mortgage interest survives the chapter 7 discharge and is a "claim" as defined in Bankruptcy Code section 101(5).  Accordingly, the Proofs of Claim were not fraudulent notwithstanding the Plaintiff received a discharge in the First Bankruptcy Case.

The Court rejected Plaintiff's arguments that the Proofs of Claim were not timely filed or deficient and denied the Plaintiff's motion to strike the Notice of Transfer holding that the

---

[2]    Both promissory notes were produced for inspection by the Plaintiff and the Court on September 1, 2021. (Sept. 1, 2021, Hr'g Tr. 13:13– 21:25, ECF No. 231.)

objection to the Notice of Transfer was not timely, the Plaintiff lacked standing to object to the Notice of Transfer, and there were no grounds to strike the exhibits to the Notice of Transfer.

The Court rejected the Plaintiff's request for $10,000 in costs and the return of payments to Rushmore or Fay made while Plaintiff was attempting to obtain mortgages modifications because the Plaintiff did not establish that either servicer engaged in conduct that would warrant an award of monetary sanctions.

Lastly, the Court held there was cause to grant the Lift-Stay Motion based on the Plaintiff's failure to make post-petition mortgage payments.

**This Adversary Proceeding**

On January 29, 2021, Plaintiff filed a complaint (the "Complaint") commencing this Adversary Proceeding.  (ECF No. 1.)  Plaintiff alleges the Defendants perpetrated a mortgage modification scheme, "in concert, using the internet, email and phone electronic equipment at all times."  (Complaint at 20.)  The Complaint asserts causes of action against all Defendants for fraud, wire fraud, and negligent misrepresentation.  Plaintiff explains she commenced the Adversary Proceeding in response to Law PC's motion to withdraw as counsel and in anticipation of the Chapter 13 Trustee's motion to dismiss the Plaintiff's chapter 13 case. (Complaint at 3.)  Plaintiff requests the Court enjoin Law PC from withdrawing as counsel until all fees paid by Plaintiff are returned and to enjoin the Chapter 13 Trustee from seeking dismissal of the case until all chapter 13 plan payments are returned.  (Complaint at 19.)  Lastly, Plaintiff seeks replevin of the amounts paid to Law PC, the Chapter 13 Trustee, and Rushmore. (Complaint at 18-19.)

Plaintiff claims Law PC's motion to withdraw was made after Plaintiff's numerous inquiries concerning the loan modifications for her two properties.  (Complaint at 11.)  The

Complaint includes a timeline of communications between Plaintiff, on the one hand, and David Van Nostrand, Kathryn Venzia, and Jessica Muzar (all employees of Law PC), on the other hand, suggesting Plaintiff's question were not answered or not answered satisfactorily or promptly. (Complaint at 6-11). The Plaintiff also complains that Aronow and Shadood failed to object to the Proofs of Claim. (Complaint at 6.)

The Complaint alleges Defendants have been disciplined for conducting loan modification scams in Maryland, California, and Florida. (Complaint at 11.) The Complaint does not specify which Defendants were disciplined but includes what appears to be several pages of a consent order and settlement agreement between the Maryland Office of the Commissioner of Financial Regulation and Law PC, dated as of April 29, 2019. (Complaint at 12-17.) The consent order suggests Law PC charged each of 43 Maryland consumers a $1,600 up-front fee for loan modification services in violation of the Maryland Mortgage Assistance Relief Services Act. (Complaint at 12-15.) Law PC did not admit or deny the violations but agreed to pay restitution of $123,661.50 to the Maryland consumers, a fine of $10,000, and to abide by certain other conditions. (Complaint at 15, 16-17.)

The complaint alleges Shadood's employment by the Chapter 13 Trustee created a conflict of interest. (Complaint at 3.) Plaintiff points to the Bankruptcy Case and Adversary Proceeding dockets which reference Shadood as Plaintiff's attorney of record long after Shadood started working for the Chapter 13 Trustee. (*Id.*) Plaintiff also alleges Shadood did not withdraw as Plaintiff's counsel and the Chapter 13 Trustee has not filed a notice of substitution of counsel. (*Id.*)[3]

---

[3]    For purposes of clarification, the Chapter 13 Trustee did not appear through counsel in the Plaintiff's bankruptcy case.

Plaintiff also complains the Chapter 13 Trustee sent Plaintiff a letter that a hearing on the Chapter 13 Trustee's motion to dismiss the Plaintiff's bankruptcy case had been adjourned, notwithstanding the Chapter 13 Trustee had not filed or served a motion to dismiss.  (Complaint at 17.)  Plaintiff alleges she felt "intimidated and threatened by the Trustee."  (Complaint at 18.) Plaintiff also alleges Aronow, Rushmore, and Fay received funds not reported in the Chapter 13 Trustee's quarterly reports.  (Complaint at 19.)

The Complaint repeats allegations made in the Claims Objections that there was fraud in connection with the Residential Property mortgage and Dwelling and Rushmore lack standing to enforce the Residential Property mortgage.  In that regard, Plaintiff alleges the original Residential Property mortgagee was incorporated more than three years after the date of the mortgage and was not registered with the New York Secretary of State, the endorsement on the promissory note is undated and in blank with a stamped signature, and the chain of mortgage assignments is invalid because the person that endorsed the note lacked authority to do so. (Complaint at 4, 5.)

Similarly, the Complaint repeats allegations made in the Claims Objections that there was fraud in connection with the Investment Property mortgage and Truman and its servicers do not have standing to enforce the mortgage.  In that regard, Plaintiff alleges there are several entities, incorporated in different states, with the name "Countrywide Home Loans, Inc." (the original Investment Property mortgagee) and Plaintiff is investigating which entity is the mortgagee for the Investment Property mortgage, the person that endorsed the promissory note for the Investment Property is a "known robo-signer executing documents for different Bank of America related entities", and the mortgage assignments attached to the Investment Prop. Proof

of Claim are heavily redacted and not all of the mortgage assignments are recorded under the Plaintiff's name.  (Complaint at 5, 6.)

The complaint itemizes twenty payments of $500 each allegedly made to Law PC, two payments of $2,958.42 paid to Rushmore, and fourteen payments to the Chapter 13 Trustee totaling $67,200.00.  (Complaint at 18-19.)  The Complaint seeks replevin of these amounts, an accounting by a certified public accountant for all sums paid to the Defendants, and $2,500,000 in damages.  (Complaint at 11, 20.)

**Motions to Dismiss and Request to Amend the Complaint**

Each Defendant timely filed a motion to dismiss the Complaint for failure to state a claim. (ECF Nos.  7, 8, 12, 15, 20, 21.)[4]  On April 17, 2021, Plaintiff moved for an extension of time to file an amended complaint and motion for jury trial.  (ECF Nos. 49, 50.)  On May 12, 2021, Plaintiff filed a Notice of Dismissal of this Adversary Proceeding.  (ECF No.  64.)  At a July 29, 2021 hearing, Plaintiff clarified that she did not want to dismiss and reiterated her request to file an amended complaint.  (July 29, 2021, Hr'g Tr. 15: 6-7, ECF No. 73.)  The Court gave Plaintiff until August 20, 2021 to file an amended complaint,[5] scheduled a status conference for August 31, 2021, and set deadlines for the Defendants to answer, move or otherwise respond to the amended complaint.  (July 29, 2021, Hr'g Tr. 17: 24-25 – 18: 1-2, 17-19, ECF No. 73.)  Also, the Court gave each Defendant the option of having its motion to dismiss the Complaint treated as a motion to dismiss any amended complaint.  (July 29, 2021, Hr'g Tr. 18: 20-25 – 19: 1-3, ECF No. 73); (ECF No. 74.)

---

[4]      Certain Defendants amended their motions to dismiss. (ECF Nos. 9, 24, 25.)

[5]      Plaintiff alleges the Court afforded Plaintiff less than 24 hours to file her first amended complaint. (Amended Complaint at 4.)  The Court is unclear why the Plaintiff believes that to be the case.

**The Amended Complaint**

The Amended Complaint asserts the same five causes of action as in the Complaint; however, the jurisdictional statement of the Amended Complaint also references 18 U.S.C. § 152(4), which prohibits knowingly and fraudulently filing a false proof of claim. (Amended Complaint, ECF No. 77.) [6]

The Amended Complaint includes additional allegations concerning Plaintiff's claim that the Defendants are engaged in a mortgage modification scheme. (Amended Complaint at 3-4.) The Amended Complaint alleges homeowners were targeted with advertisements from Law PC and another law firm claiming the firms could help the homeowners with foreclosures. (Amended Complaint at 3 and Exhibit A.) The Amended Complaint alleges the "scammers" control the loan modification process. (Amended Complaint at 3.)

The Amended Complaint includes what appears to be a copy of a press release from the Department of Justice announcing a settlement of civil fraud claims against Rosicki, Rosicki & Associates ("Rosicki"). (Amended Complaint at 4-6.) The press release states Rosicki committed fraud by overcharging Fannie Mae and the Department of Veteran's affairs for foreclosure and eviction related expenses. (*Id.*) Plaintiff alleges Rosicki, who was the mortgagee's counsel in the Residential Property foreclosure action, manufactured and filed fraudulent mortgage assignments to obtain a judgement of foreclosure against Plaintiff. (Amended Complaint at 4.) The Amended Complaint alleges that when Rosicki closed, Defendant Williams took case files from Rosicki, her former employer, to Gross Polowy, P.C., her current employer. (*Id*. at 3.) There are no allegations concerning Williams' use or misuse of

---

[6]    The Plaintiff named the United States of America and Does 1-100 as additional defendants in the Amended Complaint. The Amended Complaint was not served on the United States of America until January 14, 2022. (ECF No. 141.) The United States of America filed a motion to dismiss February 14, 2022. (ECF No. 142.) The Amended Complaint does not describe the unnamed defendants.

the case files.  Additionally, Plaintiff claims Williams' filing of the Proofs of Claim is fraudulent because the mortgage assignments to Tiki and Dwelling are fraudulent.  (*Id.* at 7.)

The remainder of the Amended Complaint repeats the allegations in the original Complaint.

## Aronow's Motion to Dismiss

On March 3, 2021, Aronow filed his motion to dismiss the Complaint and opted for his motion to be deemed a motion to dismiss the Amended Complaint.  (ECF No. 21.)

On September 31, 2021, Plaintiff filed her objection to Aronow's motion to dismiss. (ECF No. 104.)  The objection includes many new allegations.

Plaintiff alleges Aronow used Shadood and other employees to implement the "scam" and housed an underwriter for Rushmore in his offices.  (*Id.* at 1.)  Plaintiff claims Aronow's employees pushed the loan modification on Plaintiff, failed to answer Plaintiff's questions, and stole more than $86,000 from her. (*Id.* at 2.)  Plaintiff concludes Aronow breached the fiduciary duties owed to her under New York's Code of Professional Responsibility.  (*Id.*)

Plaintiff makes numerous allegations that Aronow failed to represent Plaintiff properly. Plaintiff alleges Aronow willfully, intentionally, and purposefully violated the Bankruptcy Rules and other laws by docketing a letter stating that Plaintiff applied for a loan modification for the Investment Property.  (*Id.* at 2.)  Plaintiff claims the letter was improper because the Investment Property was protected by the automatic stay and, therefore, there was no need for a loan modification.  (*Id.* at 2-3.)  Plaintiff claims Aronow failed to investigate or object to the Lift-Stay Motion or the Investment Prop. Proof of Claim.  (*Id.* at 3.)  Plaintiff also claims Aronow and his firm failed to advise the Plaintiff she was paying an additional $1,000 per month in attorney's fees for the "loan modification scam."  (*Id.* at 3-4.)  Further, she contends the payments on the two loan modifications were improper because they were made from proceeds from a worker's

compensation settlement that were exempt funds.  (*Id.*)  The Plaintiff claims Aronow and

Shadood conspired to commit fraud and theft and conspired with the Chapter 13 Trustee to cover

it up.  (*Id.* at 4.)[7]

Plaintiff admits that Law PC returned all attorneys' fees except for $1,435.  (*Id.* at 3.)

She claims, however, Aronow breached his fiduciary duty by failing to turn over her file or

provide a final accounting. (*Id.* at 4.)  She claims his failure to fulfill his ethical and fiduciary

duties to Plaintiff and failure to supervise other attorneys at Law PC caused her financial loss and

emotional stress.  (*Id.*)

**The Chapter 13 Trustee's Motion to Dismiss**

On February 22, 2021, the Chapter 13 Trustee filed her motion to dismiss the complaint.[8]

(ECF No. 7.)  She opted to have her motion treated as one to dismiss the Amended Complaint.

On September 21, 2021, the Plaintiff filed her reply, including a litany of new allegations against

the Chapter 13 Trustee and Shadood.  (ECF No. 106.)

Plaintiff alleges the Chapter 13 Trustee breached her fiduciary duty by failing to

investigate the Plaintiff herself.  Plaintiff claims the Chapter 13 Trustee should have investigated:

- the payments to Plaintiff by her adult children.  Plaintiff alleges Shadood
  instructed Plaintiff's children to deposit money into Plaintiff's bank account to
  give the erroneous impression Plaintiff could fund a chapter 13 Plan.

- the chapter 13 plan payments and the additional payments for the loan
  modifications for the Residential Property and the Investment Property.

- Plaintiff's schedules.  At the Bankruptcy Code section 341 meeting of creditors,
  Plaintiff disclosed she was the plaintiff in a personal injury action that was not
  disclosed in Plaintiff's schedules.  Plaintiff claims the Chapter 13 Trustee should
  have asked Shadood or Aronow about the omission and directed the Plaintiff to

---

[7]     Plaintiff makes additional allegations against Aronow and Shadood in her objections to Rushmores'
motions to dismiss.  *See infra* pp. 21-22.

[8]     Krista Preuss was appointed as successor chapter 13 trustee, effective October 1, 2021, due to Marianne
DeRosa's retirement from the panel of chapter 13 trustees. (ECF No. 113.).

amend her schedules to include the personal injury action as an asset of the bankruptcy estate. Plaintiff claims her schedules erroneously stated she had $63,000 on deposit at TD Bank and the Chapter 13 Trustee should have investigated that error.

(*Id*. at 1, 2.)

Plaintiff also claims the Chapter 13 Trustee failed to object to proofs of claim, notwithstanding many proofs of claim were for discharged debts or claims Plaintiff believed were improper.  (*Id*. at 3, 4.)

The objection also alleges there were conflicts of interest due to the Chapter 13 Trustee's employment of Shadood.  Plaintiff alleges Shadood was with the Chapter 13 Trustee at the March 4, 2020 meeting of creditors, but the Chapter 13 Trustee did not do a roll call to conceal the conflict of interest.  (*Id*. at 4-5.)  Further, Plaintiff alleges the Chapter 13 Trustee failed to recuse herself or restrict Shadood from Plaintiff's case.  (*Id*. at 5.)  Plaintiff claims the Chapter 13 Trustee's claim that she established a "Chinese wall" to shield Shadood from cases involving Law PC was legally insufficient.  (*Id*.)

Plaintiff claims she and her estate were damaged because:

- Plaintiff made "pre-confirmation chapter 13 plan payments with uncontested and unfavorable terms of two loan modifications."

- Shadood directed Plaintiff to make loan modification payments outside the plan while Plaintiff was making plan payments that were "large uncontested, unverified and unfavorable."

- Shadood failed to object to proofs of claim.  If such claims were disallowed, the plan payments would decrease as would the chapter 13 fees.

(*Id*. at 5.)  Plaintiff made demand for a refund of the $5,420 in chapter 13 statutory fees.  (*Id*. at 6.)

**Shadood's Motion to Dismiss**

On February 23, 2021, Shadood filed a motion to dismiss the Complaint.  (ECF No. 9.)  She opted for that motion to be treated as a motion to dismiss the Amended Complaint.  On September 21, 2021, Plaintiff filed her objection to Shadood's motion to dismiss.  (ECF No. 105.)  The objection raises new allegations and asserts claims for breach of fiduciary duty and attorney malpractice.

In the objection, Plaintiff alleges that from February 3, 2020 to February 3, 2021, Shadood was Plaintiff's and the Chapter 13 Trustee's attorney.  (*Id*. at 1.)  Plaintiff claims Shadood was removed from the docket only after Plaintiff so demanded and there is no order officially removing Shadood as Plaintiff's attorney of record.  (*Id*. at 2.)  Plaintiff also claims Shadood attended the March 4, 2020 meeting of creditors as the Chapter 13 Trustee's representative.  (*Id*. at 5.)  Plaintiff claims the "dual representation" violates New York's Code of Professional Responsibility.  (*Id*.)

Plaintiff alleges Shadood committed perjury, breached her fiduciary duties and committed malpractice by failing to disclose Plaintiff's personal injury action and by including a $63,000 bank account balance on Plaintiff's Schedule A/B.  (*Id*. at 2, 5.)  Plaintiff claims Shadood falsified Plaintiff's Schedule I and committed fraud by instructing Plaintiff's adult children to make deposits into Plaintiff's bank account to give the appearance Plaintiff could fund the chapter 13 plan.  (*Id*. at 3-4.)  Relatedly, Plaintiff claims Shadood filed the schedules even though Plaintiff did not review or execute all schedules.  (*Id*. at 2.)  Plaintiff alleges Shadood inflated the TD Bank account balance to give the erroneous impression that Plaintiff had "non-exempt assets to fund a loan modification scam" and Shadood collaborated with Rushmore "to set up the Plaintiff to be accepted into the bankruptcy court's loss mitigation

program." (*Id*. at 2-3.)  Further, Plaintiff claims Shadood's intent was to set up the Plaintiff to lose her properties for her co-Defendants' benefit.  (*Id*. at 3.)

Plaintiff also claims Shadood set up a loss mitigation for the Investment Property outside of the Court's loss mitigation program and planned to use the Plaintiff's exempt worker's compensation settlement to make the payments.  (*Id*. at 4.)  Plaintiff claims this was done "to steal the exempt funds for Shadood and her co-Defendants knowing the Plaintiff's chapter 13 case would be unsuccessful and the Plaintiff would be broke and homeless." (*Id*.)  She also claims Shadood filed a plan under which Plaintiff would simultaneously make plan payments and payments under the two loan modification programs.  (*Id*. at 5.)

Plaintiff alleges she paid a $3,500 retainer to Law PC but Law PC only disclosed receipt of $2,065, evidencing that Shadood stole $1,435 for herself.  (*Id*. at 4-5.)  Further, Aronow included the balance of fees owed in the chapter 13 plan and filed a proof of claim for the fees owed to the firm.  (*Id*.)  Plaintiff also claims the attorneys' fees were not adequately explained and Law PC was paid without the court's knowledge or permission.  (*Id.* at 6.)

Plaintiff also claims Shadood failed to object to proofs of claim even though many claims were discharged in the First Bankruptcy Case.  (*Id.* at 5.)

**<u>Williams' Motion to Dismiss</u>**

On September 21, 2021, Williams filed her motion to dismiss the Amended Complaint.  (ECF No. 101.)  On October 26, 2021, Plaintiff filed her objection to Williams' motion to dismiss.  (ECF No. 119.)  The pleading includes new allegations, including alleged impropriety and fraud in the foreclosure actions, numerous allegations against Aronow and Shadood, including that they bullied her into applying for a loan modification, and numerous

allegations concerning alleged fraud in the assignments of the mortgages on the Residential Property and the Investment Property. (*Id*. at ¶¶ 5-21, 24, 25.)

The Plaintiff also alleges that Gross Polowy, LP's and Williams' representation of Rushmore for itself and as servicer for the numerous entities that previously held or currently hold the mortgages on the Investment Property and the Residential Property gives the "appearance of unethical practices and conflicts of interest." (*Id*. at ¶ 23.)

The Plaintiff also claims that Williams willingly, knowingly, intentionally, and fraudulently filed the Residential Prop. Proof of Claim. (*Id*. at ¶ 22.) Plaintiff also alleges Williams willfully and intentionally failed to do her due diligence after Plaintiff provided evidence the Proofs of Claim were fraudulent causing Plaintiff "financial, mental and emotional distress." (*Id*. at ¶ 27.)

**Fay's Motion to Dismiss**

On September 8, 2021, Fay filed its motion to dismiss the Amended Complaint. (ECF No. 90.) On October 26, 2021, the Plaintiff filed her objection to Fay's motion to dismiss. (ECF No. 122.) The objection includes additional allegations against Fay, such as: Fay's counsel filed a false claim using fictitious records and failed to provide a valid chain of ownership of the mortgage or note (*Id*. at ¶¶ 6, 10, 11); Fay failed to file a proof of claim prior to filing the Lift-Stay Motion (*Id*. at ¶ 7); and, the Lift-Stay Motion is fraudulent and filing it caused financial loss and undue stress. (*Id*. at ¶ 8.) The Plaintiff concludes that Fay is willfully and intentionally perpetuating a fraud on the Court. (*Id*. at ¶ 13.)

**Rushmore's Motion to Dismiss (as servicer for Residential Property Mortgage)**

On September 22, 2021, Rushmore, in its capacity as servicer for the Residential Property mortgagee, filed its motion to dismiss the Amended Complaint. (ECF No. 107.)

On October 26, 2021, Plaintiff filed her objection to Rushmore's motion to dismiss. (ECF No. 121.)  Plaintiff alleges the judgment of foreclosure for the Residential Property is fraudulent because it is signed by a clerk and not a judge, lacks a seal, Nationstar Mortgage, LLC's name was handwritten into the caption of the judgment, and Nationstar Mortgage LLC was not the owner of the promissory note when the judgment was entered.  (*Id*. at 4.)  Plaintiff also alleges the mortgage assignments were improper for various reasons, hence, Rushmore did not have standing to file the Residential Prop. Proof of Claim.  (*Id*. at ¶¶ 6, 7.)  Based on those allegations, Plaintiff claims the Residential Prop. Proof of Claim is false and deficient.  (*Id*.)  Plaintiff also claims the transfer of the claim from Tiki to Dwelling was improper.  Plaintiff makes a variety of unrelated allegations suggesting none of Rushmore, Dwelling or Tiki has standing to collect the debt secured by the mortgage on the Residential Property:

- None of Dwelling, Tiki or its predecessors in interest proved it was party to a servicing agreement with Rushmore.

- Gross Polowy, LLC represented Rushmore in numerous capacities (e.g., as servicer for Dwelling, Tiki, Truman and one or more of their predecessors in interest) which is unethical and a conflict of interest.

- The original mortgagee was not incorporated until three years after the execution of the mortgage and note.

- Plaintiff did not enter into any contracts with Dwelling or Tiki and no contracts have been produced.

- Rushmore's counsel filed the Transfer of Claim without performing due diligence notwithstanding Plaintiff put counsel on notice the judgment of foreclosure and mortgage assignments were fraudulent.

(*Id*. at ¶¶ 10, 11.)

Plaintiff then repeats allegations made in other pleadings, including alleging Aronow and Shadood bullied her into applying for a loan modification, and improperly

counseled Plaintiff to simultaneously make plan payments to the Chapter 13 Trustee and trial mortgage modification payments.  (*Id.*  at ¶ 9.)

**Rushmore's Motion to Dismiss (as servicer for the Investment Property Mortgage)**

On September 16, 2021, Rushmore, in its capacity as servicer for the Investment Property mortgage, moved to dismiss the Amended Complaint.  (ECF No. 99.)  On October 26, 2021, Plaintiff filed her objection to Rushmore's motion to dismiss.  (ECF No. 120.)  Plaintiff appears to argue that Rushmore's counsel of record and its lead attorney may not have authority to represent Rushmore.  (*Id.* at ¶ 5.)  Although difficult to understand, it also appears Plaintiff is claiming the Investment Property Proof of Claim is fraudulent because the documents attached to it are fictitious and fail to provide a valid chain of ownership for the mortgage or note.  (*Id.* at ¶ 8.)  Plaintiff also claims the Lift-Stay Motion and Notice of Assignment of Claim are fraudulent. (*Id.* at ¶¶ 9, 10.)

Plaintiff also alleges Rushmore failed to conduct due diligence when the "alleged lien was transferred from Fay to Rushmore/Truman."  (*Id.* at ¶ 12.)  In that regard, Plaintiff alleges Rushmore failed to comply with Bankruptcy Rules 3001(d) and (e)(2) or investigate the proof of claim filed by Fay. (*Id.* at 12.)  Plaintiff also alleges there is no evidence Truman had a contract with Fay or Rushmore and Plaintiff did not have a contract with Truman.  (*Id.* at 14.)  Further, Plaintiff alleges the "chain of lien ownership. . . is fraudulent" and Rushmore has not provided any evidence that bears Rushmore's or Truman's name.  (*Id.* at ¶¶ 13, 15.)

Plaintiff also makes the following allegations against Aronow and Shadood:

- Aronow and Shadood breached their fiduciary duties by failing to challenge Fay's standing, the validity of the mortgage assignments, or object to the Investment Property Proof of Claim or the Lift-Stay Motion.

- Aronow and Shadood willfully and intentionally defrauded the Plaintiff, which led to "the failure of a loan modification the Plaintiff never

requested and bullied her into applying for a loan modification outside the Bankruptcy Court's official loss mitigation program."

- Aronow or Shadood failed to amend the chapter 13 plan after Williams filed a notice that transferred the servicing of the claim from Fay to Rushmore.

- Law PC's employees requested financial information from Plaintiff's "adult children who are not on the mortgage or the note and requested large lump sums of funds from these adult children as if they were attempting to refinance the loan."

- Aronow failed to answer Plaintiff's questions.

(*Id.* at ¶¶ 9, 11.)

## DISCUSSION

### I.    Standards Respecting Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In the case of a *pro se* litigant, the Court reads the pleadings leniently and holds them "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir. 2011) (*Pro se* plaintiff "is entitled to a particularly liberal reading" of his complaint). Nonetheless, a *pro se* plaintiff must plead enough facts to state a claim for relief that is plausible on its face and contain factual allegations sufficient to raise a "right to relief above the speculative level." *Johnson v. City of New York*, 669 F. Supp. 2d 444, 448–49 (S.D.N.Y. 2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, allegations outside the complaint, including new allegations in a plaintiff's objection to a motion to dismiss cannot be considered by a court.  *In re Colonial Ltd. P'ship*

*Litig. v. Colonial Equities Corp.*, 854 F. Supp. 64, 79 (D. Conn. 1994) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss"); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (same). However, where the plaintiff is *pro se*, "a court may consider new allegations raised by the plaintiff in opposition to a motion to dismiss … [I]f statements made outside the operative complaint demonstrate that a pro se plaintiff could state a claim, if allowed to amend[.]" *Baker v. Bank of Am., N.A.*, 2016 WL 9409022, at *1 (S.D.N.Y. Oct. 31, 2016), *aff'd,* 706 F. App'x 43 (2d Cir. 2017). In such case, the Court must grant leave to amend. *Id.* Accordingly, the Court will consider the allegations in the Plaintiff's objections to the motions to dismiss in determining whether the Plaintiff states a claim against any of the Defendants.

Several of the Defendants' motions to dismiss and replies contain allegations against the Plaintiff or explanations for their conduct and supporting documentation. The Court is not considering those allegations, explanations, or documents. In determining a motion to dismiss, a court should be focused solely on whether a plaintiff's allegations state a plausible claim for relief. A court should not consider other explanations for a defendant's conduct, even if a defendant's explanation is more likely to be true. 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12.34 (3d ed. 2021).

On a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), a court must accept all *factual* allegations in the complaint as true, even if the allegations are doubtful in fact. *Bell Atl. Corp.*, 550 U.S. at 545-46 (emphasis added). A court, however, need only accept as true those allegations that are truly factual allegations as opposed to allegations that are conclusory or subjective characterizations. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions

will not suffice to prevent a motion to dismiss."); *Ashcroft*, 556 U.S. at 663 ("threadbare recitals of elements of a cause of action, supported by mere conclusory statements" are not sufficient."); *Bell Atl. Corp.*, 550 U.S. at 545 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."); *see also* 2 James Wm. Moore*et al.*, *Moore's Federal Practice* § 12.34 (3d ed. 2021) ("Courts need not accept as true bald assertions, subjective characterizations, or legal conclusions.").

Plaintiff's Amended Complaint and her objections to the motions to dismiss contain allegations that are not factual allegations but characterizations or legal conclusions, for example: "Aronow and Shadood willfully and intentionally defrauded the Plaintiff" (ECF No. 120 at ¶ 11); "Fay is willfully and intentionally perpetuating a fraud on the court" (ECF No. 122 at ¶ 13); and "Williams willfully and intentionally failed to do her due diligence" (ECF No. 119 at ¶ 27). The Court cannot consider those types of allegations in determining whether the Plaintiff states a claim.

## II.    Plaintiff's Claims for Fraud and Negligent Misrepresentation

Under New York law, to plead a claim for fraud: "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *see also Marini v. Adamo (In re Adamo)*, 560 B.R. 642, 648 (Bankr. E.D.N.Y. 2016).

To state a claim of negligent misrepresentation under New York law, a plaintiff must plead "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the

information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *see Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 117 (E.D.N.Y. 2020).

Fed. R. Civ. P. 9(b) requires the plaintiff to plead fraud with particularity. Even where fraud is not an element of the claim, the allegations must satisfy Rule 9(b) if the claim is based on fraudulent conduct. *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 n.49 (S.D.N.Y. 2005); *see Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004) ("Rule 9(b) ... is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").

Respecting the requirements of Rule 9(b), the Second Circuit Court of Appeals stated:

> In essence, Rule 9(b) places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state. As to the first, we have held that the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). As to the second, though mental states may be pleaded "generally," Plaintiffs must nonetheless allege facts "that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290–91 (2d Cir. 2006).

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

Courts in this circuit disagree as to whether Rule 9(b) applies to claims for negligent misrepresentation. *Compare Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 453 (S.D.N.Y. 2017) (Claim for negligent misrepresentation, not based on allegation of scienter or recklessness and independent of fraud claim, need not be pled with particularity), *with Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 350 (E.D.N.Y. 2014) (negligent

misrepresentation claims are characterized as a species of fraud and must be pled with specificity). However, even courts holding that negligent misrepresentation claims need not be pled with particularity in every instance agree that the Rule 9(b) pleading requirements apply if "the negligent misrepresentation claim is based on the same set of facts as those upon which a fraud claim is grounded." *Silvercreek*, 248 F. Supp. 3d at 453 (quoting *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254-55 (S.D.N.Y. 2011)).

Here, Plaintiff's negligent misrepresentation claims are not set forth separately from her fraud claims and are based on the same facts as her fraud claims. Therefore, Plaintiff's negligent misrepresentation claims are required to be pled with particularity.

Plaintiff's allegations respecting the existence of a mortgage modification scheme include allegations that portray the mortgage foreclosure industry and the Defendants as corrupt. For example, the Plaintiff's pleadings note that Rosicki was prosecuted for overcharging government agencies, Law PC was prosecuted for illegally charging up-front mortgage modification fees, and personnel that executed mortgage documents are "known robo-signers." Added to this mix is Plaintiff's misunderstanding of bankruptcy law and foreclosure law and Law PC's admitted mistake in charging post-petition date legal fees without obtaining prior bankruptcy court authority. Given this backdrop, one should not be surprised the Plaintiff claims she is the victim of a mortgage modification scheme. However, as set forth more fully below, despite Plaintiff's voluminous pleadings, Plaintiff has failed to identify one false statement or misrepresentation made by a Defendant to the Plaintiff, upon which Plaintiff relied, that resulted in damages to the Plaintiffs. Those factual allegations of a misstatement are essential to establishing a claim for fraud or negligent misrepresentation. Absent those allegations, Plaintiff's fraud and negligent misrepresentation claims must be dismissed.

### a. **Fraud and Negligent Misrepresentation Claims against Aronow and Shadood**

Plaintiff alleges Aronow is part of a mortgage modification scheme based on Law PC's advertisements targeting homeowners that defaulted on their mortgages. However, Plaintiff does not identify any statements in Law PC's advertisements that are false.  Plaintiff also claims the presence of a Rushmore representative in Law PC's offices evidence a scheme.  However, Plaintiff alleges no facts as to how Aronow's and Rushmore's collaboration caused the Plaintiff to suffer damages.  Rather, Plaintiff's allegations are limited to conclusory statements that Aronow, Rushmore and the other Defendants schemed to take Plaintiff's money and real properties.  Similarly, Plaintiff alleges that Shadood collaborated with Rushmore for Plaintiff to be accepted into the Court's loss mitigation Program.  However, the loss mitigation program is predicated on negotiation and is intended to be collaborative.

Plaintiff points to the Maryland consent judgment as evidence of fraud.  The consent judgment arises from Law PC's alleged violation of a Maryland statute that *per se* prohibits upfront fees for mortgage modification services– regardless of what was said to the consumer or whether there was an intent to defraud the consumer.  Therefore, the Court cannot reasonably infer that Aronow or Shadood intended to defraud Plaintiff or made a misrepresentation to Plaintiff based on Law PC's violation of the Maryland statute.

The Amended Complaint lists phone calls and emails between the Plaintiff and Law PC's employees to show that Plaintiff's questions were inadequately or untimely answered, if at all.  None of those communications were by or with Aronow or Shadood.  Accordingly, those communications cannot support fraud or negligent misrepresentation claims against Aronow or Shadood.[9]

---

[9]    Potentially, those communications from Law PC's employees could form the basis of a claim against Law PC.  Under the doctrine of respondeat superior, a corporation, including a professional services corporation, is liable

Plaintiff alleges she was defrauded by Aronow and Shadood because she was told to make plan payments and loan modification payments from exempt funds. Additionally, her adult children were advised by Shadood to deposit funds into the Plaintiff's bank account to give the erroneous impression the Plaintiff could afford mortgage modifications. None of those allegations support a claim for fraud or negligent misrepresentation. The Plaintiff is correct that a chapter 13 debtor is not required to use exempt funds to pay creditors. However, debtors may choose to use exempt funds to make plan payments or mortgage payments. Similarly, there is nothing fraudulent about non-debtors funding a debtor's chapter 13 plan or mortgage payments, even if the non-debtors are not liable for such debts. Anecdotally, it is common for debtors to use exempt funds and for family to contribute funds to save a debtor's residence from foreclosure.

Plaintiff alleges there is fraud because she was told by Aronow, Shadood or other Law PC employees to make monthly chapter 13 plan payments in addition to monthly loss mitigation payments. Although the Court must accept these allegations as true, Shadood left Law PC well before the Plaintiff obtained a trial loan modification and it is unlikely she counseled Plaintiff on anything at that time. Even if true, those statements do not evidence fraud because Plaintiff's money actually was used for chapter 13 plan payments and mortgage modification payments. Whether the advice was proper is examined below in section VI.

Plaintiff alleges Aronow and Shadood failed to object to the Proofs of Claim or the Lift-Stay Motion. Those allegations do not support a claim for fraud or negligent misrepresentation. There is no allegation that Aronow or Shadood represented to Plaintiff they would object to the

---

for a tort committed by its employee. *Yaniv v. Taub*, 256 A.D.2d 273, 274, 683 N.Y.S.2d 35 (N.Y. App. Div. 1st Dept. 1998) (*citing Connell v. Hayden*, 83 A.D.2d 30, 46, 443 N.Y.S.2d 383 (N.Y. App. Div. 2d Dept. 1981)).

claims or the Lift-Stay Motion and reneged on that promise.  The Court takes judicial notice of the decision in which the Court overruled the Claim Objections, allowed the Proofs of Claim, and granted the Lift-Stay Motion.  (Memorandum and Decision, November 15, 2021, Bankruptcy 19-46591, ECF No. 264.)  From that, the Court may infer no damage was caused by Aronow's and Shadood's failure to file claims objections.

Plaintiff alleges Shadood committed fraud by working for the Chapter 13 Trustee while still employed as Plaintiff's counsel.  The Court must accept as true the allegation that Shadood represented the Plaintiff after she left the employ of Law PC regardless of how unlikely it is to be true. *Bell Atl. Corp.*, 550 U.S. at 545-46.  Plaintiff's allegations, however, are limited to the facts that Shadood's name remained on the court's docket as Plaintiff's counsel after Shadood started working for the Chapter 13 Trustee and Shadood was present at a meeting of creditors.  There are no allegations of any statements made or actions taken by Shadood while employed by the Chapter 13 Trustee.  Further, Plaintiff makes no connection between the damages she allegedly suffered and Shadood's alleged employment by the Chapter 13 Trustee.  Rather, Plaintiff makes only conclusory allegations that Shadood intended to benefit the other Defendants.  Accordingly, even if the allegation that Shadood simultaneously worked for the Plaintiff and the Chapter 13 Trustee is true, Plaintiff has not stated a claim for fraud or negligent misrepresentation.

Plaintiff's allegations that Shadood took Plaintiff's money are contradicted by Plaintiff's allegations that her funds were paid to Law PC and were returned, with the possible exception of $1,435, which is addressed below.  *See infra* pp. 38-42.

Plaintiff complains Shadood made the following errors in preparing the Plaintiff's bankruptcy schedules:  including in Schedule A/B a $63,000 bank balance for the Plaintiff's TD Bank account; failing to include the Plaintiff's personal injury claim in Schedule A/B; and,

including contributions from the Plaintiff's children on Schedule I.  Plaintiff further alleges

Shadood filed the Plaintiff's schedules although Plaintiff did not review or execute the

schedules.[10]  Plaintiff does not allege she relied on those misstatements or how she was harmed

by these errors, except that she needed to provide the chapter 7 trustee with information to prove

the TD Bank balance was incorrect.  (*See, e.g.,* ECF No. 105 at 2.)  Accordingly, those

allegations do not state a claim for fraud or negligent misrepresentation.

### b.  Fraud, Negligent Misrepresentation, and Breach of Fiduciary Duty Claims against the Chapter 13 Trustee

In Plaintiff's objection to the Chapter 13 Trustee's motion to dismiss and in other

pleadings as well, Plaintiff asserts claims against the Chapter 13 Trustee for breach of fiduciary

duty, in addition to claims for fraud and negligent misrepresentation.

When a debtor files for bankruptcy under chapter 13 of the Bankruptcy Code, the United

States Trustee appoints a standing chapter 13 trustee to oversee the case.  A standing trustee is

considered an independent party, representing neither the debtor nor the government. *In re*

*Soussis*, 624 B.R. 559, 575 (Bankr. E.D.N.Y. 2020), *aff'd sub nom. Soussis v. Macco*, 2022 WL

203751 (E.D.N.Y. Jan. 24, 2022) (citing *Brandon v. Sherwood (In re Sann)*, 546 B.R. 850, 855

(Bankr. D. Mont. 2016)).  As such, it is a chapter 13 trustee's duty to represent the estate.  *Id.*;

*see also* U.S. Dep't of Just., Exec. Off. for U.S. Tr., *Handbook for Chapter 13 Standing*

*Trustees* 2 (2012) ("The standing trustee has a fiduciary responsibility to the bankruptcy

estate").  A chapter 13 trustee's duties are enumerated in Bankruptcy Code section 1302 and

include "inform[ing] the debtor of his duties, discourage[ing] fraudulent concealment of assets,

---

[10]      The Court takes judicial notice of the Declaration About an Individual Debtor's Schedules in which
Plaintiff affirmed under penalty of perjury that the bankruptcy schedules are true and correct.  (ECF No. 13.)

and mak[ing] the debtor aware that there is someone other than the bankruptcy court protecting the interests of the creditors." *In re Gorski*, 766 F.2d 723, 726 (2d Cir. 1985).

Plaintiff asks the Court to infer that the Chapter 13 Trustee's failure to object to the Proofs of Claim is an attempt to protect creditors at the expense of Plaintiff. That inference would be improper. The debtor, not the chapter 13 trustee, controls creditor recoveries in a chapter 13 case. Creditors receive distributions pursuant to the chapter 13 plan and only the chapter 13 debtor is authorized to file a chapter 13 plan. 11 U.S.C. § 1321. If the debtor believes a creditor filed a proof of claim that is incorrect, the debtor may object to the proof of claim. 11 U.S.C. § 502(a) (all parties in interest have may object to proofs of claim). Indeed, Plaintiff objected to the Proofs of Claim, albeit her objections were overruled. Although the chapter 13 trustee is required to object to claims if a purpose would be served (11 U.S.C. § 1302(b)(1)), the chapter 13 trustee's duty to object to claims generally runs to creditors entitled to distributions, not debtors. *Cf. Overbaugh v. Household Bank N.A. (In re Overbaugh)*, 559 F.3d 125, 128 (2d. Cir. 2009) (holding chapter 13 trustee had standing to object to debtor's motion to reclassify secured claim as unsecured claim because trustee is charged with assuring that distributions on claims are properly disbursed.). Based on the foregoing, the Chapter 13 Trustee's determination not to file claim objections does not support a claim for fraud, negligent misrepresentation, or breach of fiduciary duty.

Plaintiff complains the Chapter 13 Trustee's reports did not include payments Plaintiff made to Law PC or the mortgagees. A chapter 13 trustee's reports reflect payments made by a debtor to a chapter 13 trustee and disbursements made by the chapter 13 trustee. Reports are not intended to reflect payments made by a debtor to parties other than the chapter 13 trustee. *See Handbook for Chapter 13 Standing Trustees* at 4-8 ("The standing trustee must mail . . . to the

debtor and debtor's attorney, a report showing all receipts from the debtor and all disbursements made during the reporting period."). Accordingly, Plaintiff has no claim for fraud, negligent misrepresentation or breach of fiduciary duty based on the Chapter 13 Trustee's reports.

Plaintiff complains the Chapter 13 Trustee sent Plaintiff a letter stating that a hearing on the Chapter 13 Trustee's motion to dismiss had been adjourned notwithstanding the Chapter 13 Trustee had not yet filed a motion to dismiss. The letter gave the erroneous impression the Chapter 13 Trustee had moved to dismiss Plaintiff's chapter 13 case. Plaintiff alleges she commenced this adversary proceeding due, in part, to the Chapter 13 Trustee's letter. It was an error for the Chapter 13 Trustee to send a letter adjourning the hearing on a motion that had not yet been made but there is no plausible link between the letter and damages, if any, suffered by Plaintiff.[11]

Plaintiff alleges the Chapter 13 Trustee had a conflict of interest because Shadood worked for Law PC and represented the Plaintiff. Shadood worked on the Plaintiff's chapter 13 case while an associate with Law PC.[12] The Chapter 13 Trustee's interests were potentially adverse to the Plaintiff's interests in several respects. The Chapter 13 Trustee had a duty to investigate the financial affairs of the Plaintiff, supply information to creditors, and ensure the Plaintiff made timely plan payments. 11 U.S.C. § 1302(b)(1). Accordingly, the Amended

---

[11]    Nor does Plaintiff state a claim for intentional infliction of emotional distress. "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*, 137 A.D.3d 990, 990, 27 N.Y.S.3d 264, 266 (2016). The delivery of a single letter that erroneously reports that the Chapter 13 Trustee moved to dismiss the case is not extreme and outrageous conduct. *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710–11, 954 N.Y.S.2d 559, 562 (2012) (The subject conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'") (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86, quoting Restatement [Second] of Torts § 46, comment d). Additionally, the bald statement that Plaintiff felt threatened and intimated is insufficient allegation of damages.

[12]    It is possible that based on the conflict of interest Plaintiff could have moved successfully to disqualify Shadood as counsel for the Chapter 13 Trustee had Shadood appeared for the Chapter 13 Trustee in this case.

Complaint alleges facts sufficient to show that Shadood had a conflict of interest and could not represent the Chapter 13 Trustee in the Plaintiff's chapter 13 case. *See* N.Y. Rules of Prof. Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.")

However, the Chapter 13 Trustee's employment of an attorney with a conflict of interest does not equate to fraud, negligent misrepresentation, or a breach of fiduciary duty. The Amended Complaint (as supplemented by the Plaintiff's other pleadings) does not allege one fact from which this Court can infer that the Chapter 13 Trustee gained an advantage over Plaintiff by hiring Shadood. Further, there is no allegation that links the conflict of interest to any alleged damages suffered by Plaintiff. Additionally, the Court takes judicial notice that Shadood did not appear as counsel for the Chapter 13 Trustee in the Plaintiff's bankruptcy case.

Plaintiff alleges the Chapter 13 Trustee did not investigate the erroneous representations on Plaintiff's schedules that Plaintiff's children were contributing to Plaintiff's income and Plaintiff had $63,000 on deposit in her TD Bank account or, Plaintiff's failure to disclose her personal injury claims in her schedules. Fraud on the part of the Chapter 13 Trustee, however, cannot be inferred from the Plaintiff's failure to use care in preparing her own schedules or the Chapter 13 Trustee's failure to investigate the Plaintiff's own statements respecting her ability to fund plan payments. A different conclusion could be reached if Plaintiff had alleged the Chapter 13 Trustee represented to Plaintiff that she could afford chapter 13 plan payments or should remain in a chapter 13 case. If those statements had been made, perhaps the Court could make an inference the Chapter 13 Trustee was prolonging the Plaintiff's time in chapter 13 to increase

plan payment, which, in turn, could increase the Chapter 13 Trustee's compensation at the expense of the Plaintiff.[13]  However, there are no allegations in the Amended Complaint or in any other pleading filed by the Plaintiff in this adversary proceeding or in the main bankruptcy case that the Chapter 13 Trustee made any representations to the Plaintiff respecting Plaintiff's ability to make plan payments or whether Plaintiff should remain in chapter 13.  Indeed, excepting the letter purporting to adjourn a hearing, there are no allegations in Plaintiff's pleadings as to any statements made by the Chapter 13 Trustee.

In summary, the claims for fraud, negligent misrepresentation, and breach of fiduciary duty against the Chapter 13 Trustee must be dismissed because Plaintiff makes no allegations the Chapter 13 Trustee made any representations to the Plaintiff, much less materially false representations upon which the Plaintiff relied, that resulted in damages to the Plaintiff.  Further, there are no factual allegations supporting a plausible claim that the Chapter 13 Trustee breached a fiduciary duty owed to Plaintiff.

### c.  Fraud and Negligent Misrepresentation Claims against Fay, Rushmore, and Williams

The allegations concerning Fay and Rushmore contained in the Amended Complaint and Plaintiff's other pleadings mirror Plaintiff's allegations in the Claims Objections.  In summary, in her pleadings, Plaintiff alleged fraud in the conduct of the foreclosure actions, the assignment of the mortgages, and the filing and transfer of the Proofs of Claim.  Plaintiff also alleged that none of Fay, Rushmore, Tiki, Dwelling or Truman had standing to file the Proofs of Claim or the Lift-Stay Motion.

---

[13]     Chapter 13 trustee compensation is capped.  Accordingly, an increase in chapter 13 plan payments and chapter 13 fees does not necessarily result in an increase in chapter 13 trustee compensation.  *See* 28 U.S.C. § 586(e).

*Res judicata*, otherwise known as claim preclusion, bars the Plaintiff from asserting her fraud and negligent misrepresentation claims against Fay and Rushmore. Dismissal under Rule 12(b)(6) is appropriate when a successful affirmative defense, such as issue or claim preclusion, is conclusively established on the face of the complaint. 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34 (3d ed. 2021). As stated by the Second Circuit Court of Appeals:

> Generally res judicata is an affirmative defense to be pleaded in the defendant's answer. *See* Fed. R. Civ. P. 8(c). However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer.

*Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). For a defendant to prevail on an affirmative defense of *res judicata*, the record must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Flowers v. Conn. Light & Power Co.*, 2021 WL 5564085, at *1 (2d Cir. Nov. 29, 2021) (*citing Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

The Court takes notice of its Memorandum and Decision entered November 15, 2021 in the Plaintiff's bankruptcy case and the related orders. (Bankruptcy 19-46591, ECF Nos. 264, 266, 268 and 270); *see Pearson Cap. Partners LLC v. James River Ins.*, 151 F. Supp. 3d 392, 401 (S.D.N.Y. 2015) ("[M]atters of which the Court takes judicial notice are not considered matters outside the pleadings" and may be used in determining a motion to dismiss.).

The Court's Memorandum and Decision considered and rejected Plaintiff's claims that the mortgage assignments, foreclosure judgments, Proofs of Claim, and claims transfers were fraudulent. The Court's prior decision in the bankruptcy case bars Plaintiff's fraud and negligent misrepresentation claims asserted against Fay and Rushmore in this adversary proceeding because all three elements of *res judicata* are satisfied. First, the Memorandum was a final

adjudication on the merits.  All issues were extensively briefed by Plaintiff, the Court held several hearings on the matters, and no appeal was taken from the Memorandum or the related orders.  Second, the parties involved in the Claim Objections and the Lift-Stay Motion—the Plaintiff, Fay, and Rushmore—are the same parties involved in this adversary proceeding.  Third, Plaintiff's allegations in the Amended Complaint and her other pleadings in this adversary proceeding mirror the allegations in the Claims Objections.

Additionally, *res judicata* bars Plaintiff's claims against Williams.  The allegations in the Amended Complaint and the Plaintiff's other pleadings all relate to acts taken (or not taken) by Williams in her capacity as counsel for Fay or Rushmore.  Per this Court's earlier decision, none of those acts (or failures to act) were fraudulent or negligent.

The only allegation against Williams that is arguably unrelated to Plaintiff's claims against Fay and Rushmore is the allegation that Williams took files from the Rosicki firm as part of the "loan modification scheme."  That fact is insufficient to establish a claim for fraud or negligent misrepresentation.

### III.    Plaintiff's Request for Injunctive Relief

Plaintiff's request for a temporary restraining order must be denied as moot.  The Amended Complaint seeks to enjoin Law PC from withdrawing as Plaintiff's counsel until Law PC returns the fees paid to Law PC.  The Court already entered an order permitting Law PC to withdraw.  Plaintiff admits the fees paid to Law PC were refunded.[14]  The Amended Complaint also seeks to enjoin the Chapter 13 Trustee from moving forward with her motion to dismiss Plaintiff's chapter 13 case until all chapter 13 plan payments are returned to the Plaintiff.  The Chapter 13 Trustee has not filed a motion to dismiss, rather, Plaintiff voluntarily converted her

---

[14]     There is a dispute as to whether Law PC is required to return an additional $1,435, which is addressed below.  *See infra* pp. 38-42.

chapter 13 case to chapter 7. All plan payments (less the chapter 13 statutory fees) were returned to the Plaintiff.

## IV. <u>Plaintiff's Claims for Wire Fraud</u>

Plaintiff's claim for wire fraud must be dismissed as against all Defendants because Plaintiff does not have standing to bring the claim. Wire fraud is a statutory crime set forth at 18 U.S.C. § 1343. Fraud claims under 18 U.S.C. §§ 1341 and 1343 "[are] not actionable as a private cause of action." *Farmer v. Law Office Weiner & Weiner, LLC*, 2020 WL 6530882, at *3 (S.D.N.Y. Apr. 6, 2020) (quoting *Newman v. Jewish Agency for Isr.*, 2017 WL 6628616, at *6 (S.D.N.Y. Dec. 28, 2017)); *see also Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999) (noting consensus among Circuits that "Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes.").

## V. <u>Plaintiff's Claims for Replevin</u>

Plaintiff claims she is entitled to a refund of all amounts paid to the Chapter 13 Trustee, Law PC, and the loan modification payments. Plaintiff is not entitled to a return of those funds under the theory of Replevin. Under New York law, replevin "governs actions for the recovery of stolen or wrongfully detained property. A cause of action for Replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) (citations omitted).

The Chapter 13 Trustee returned all plan payments to the Plaintiff except for the Chapter 13 statutory fees. The Chapter 13 Trustee's rights to those funds are superior to the Plaintiff's. Section 586(e) of title 28 of the United States Code requires chapter 13 trustees to collect a percentage of chapter 13 plan payments. Each chapter 13 trustee is required to collect the fees and has no authority to waive or refund them. *See In re Soussis*, 624 B.R. at 571.

Plaintiff is not entitled to a return of the payments she made to Rushmore in connection with the loss mitigation. The payments were made voluntarily by Plaintiff and she has not articulated any facts that would entitle her to a return of those funds from Rushmore.

Lastly, all amounts paid to Law PC were refunded with the possible exception of $1,435, which is addressed below.

## VI.     Plaintiff's Claims for Malpractice and Breach of Fiduciary Duty against Aronow and Shadood

Plaintiff claims in her objections to the motions to dismiss that Aronow and Shadood committed malpractice and breached their fiduciary duties to the Plaintiff.

"The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018).

Regarding the second element – attorney negligence:

> To properly plead negligence, a party must aver that an attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Grago v. Robertson,* 49 A.D.2d 645, 646, 370 N.Y.S.2d 255 (1975). A complaint that essentially alleges either an "error of judgment" or a "selection of one among several reasonable courses of action" fails to state a claim for malpractice. *Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553. Generally, an attorney may only be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 430, 554 N.Y.S.2d 487 (1990).

*Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006).

"[T]o plead causation adequately in a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome. . . . This causation requirement, a high bar to attorney malpractice liability, seeks to insure a tight causal relationship exists between the claimed injuries and the alleged

malpractice." *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (internal citations and quotations omitted).

Under New York law, a plaintiff's recovery for legal malpractice is limited to pecuniary damages as opposed to damages related to emotional distress. *See Bryant v. Silverman*, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018); *Galu v. Attias*, 923 F. Supp. 590, 597 (S.D.N.Y. 1996) ("A plaintiff suing in malpractice [under New York law] can recover only pecuniary loss but not for mental or psychological suffering.").

Plaintiff alleges Aronow and Shadood committed malpractice by failing to object to the Proofs of Claim or the Lift-Stay Motion, collaborating with Fay and Rushmore, enrolling Plaintiff in the Bankruptcy Court's loss mitigation program for the Residential Property, using loss mitigation for the Investment Property outside of the Bankruptcy Court's loss mitigation program, counseling Plaintiff to use exempt funds to make chapter 13 plan payments and loss mitigation payments, and advising Plaintiff's adult children to contribute to Plaintiff's monthly income. Plaintiff also claims Aronow committed malpractice by informing the Court of Plaintiff's attempts at loss mitigation for the Investment Property mortgage. None of those acts constitute attorney negligence. All those acts fall under the umbrella of an attorney selecting one of several reasonable courses of action notwithstanding Plaintiff may disagree with Aronow's or Shadood's strategy. Further, Aronow's and Shadood's refusal to object to the Proofs of Claim and Lift-Stay Motion clearly is not malpractice because this Court rejected Plaintiff's objections to the Proofs of Claim and the Lift-Stay Motion. *See* Memorandum and Decision, November 15, 2021, Bankruptcy 19-46591, ECF No. 264. Therefore, Plaintiff cannot establish that but for her attorneys' negligence, Plaintiff would have achieved a favorable outcome.

Plaintiff complains Shadood committed malpractice by making errors on Plaintiff's bankruptcy schedules and simultaneously working for the Chapter 13 Trustee.  The alleged errors in the schedules did not cause the breakdown of loss mitigation, the demise of Plaintiff's chapter 13 case, or the Court's rejection of Plaintiff's objections to the Proofs of Claim or the Lift-Stay Motion.  As for the alleged conflict of interest, Plaintiff alleged no pecuniary damages related to the alleged conflict of interest.  As there is no causal relationship between the alleged acts and Plaintiff's damages, those acts do not support a claim for malpractice against Shadood.

Plaintiff claims there was malpractice because she was counseled to pay chapter 13 plan payments in addition to trial modification payments; Law PC's employees failed to answer Plaintiff's inquiries promptly, completely, or correctly and Law PC collected attorneys' fees for postpetition work without bankruptcy court approval.  Those allegations support a plausible cause of action for malpractice against Aronow.[15]

The Plaintiff's pleadings allege enough facts to satisfy the negligence element of legal malpractice.  Plaintiff alleges she was counseled to make simultaneous chapter 13 plan payments and trial loan modification payments.  (ECF No. 105 at 5.)  The Court takes judicial notice of the chapter 13 plan, filed by Law PC on Plaintiff's behalf, which provides that "[c]ontemporaneous with the commencement of a trial loan modification, the debtor(s) will amend the Chapter 13 Plan and Schedule J to reflect the terms of the trial agreement, including the direct payment to the secured creditor going forward by the debtor(s)."  (Bankruptcy 19-46591, ECF No. 32 at §§ 3.3, 9.1.)  No amendments to the chapter 13 plan or schedules were filed.  As a result, Plaintiff paid both the Chapter 13 Trustee and Rushmore.  On this record, the Court cannot determine that, as a matter of law, Law PC was not required to amend the chapter 13 plan once trial

---

[15]    Albeit it's uncertain whether the claim would lie against Aronow, Law PC or both.

modification payments commenced.  Additionally, Plaintiff alleged Law PC collected postpetition attorneys' fees without obtaining prior bankruptcy court approval, which is barred by Bankruptcy Code sections 330 and 331.

Plaintiff's pleadings allege pecuniary damages caused by the purported negligent acts. Law PC's advice caused the Plaintiff to pay trial loan modification payments in the amount of $5,916.84 to Rushmore that Plaintiff cannot recover from Rushmore.  Additionally, the advice caused Plaintiff to continue to make chapter 13 plan payments.  Although the Chapter 13 Trustee already refunded the plan payments, Plaintiff was not entitled to recover the chapter 13 fees from the Chapter 13 Trustee.  Further, although Aronow claims all attorney's fees have been returned to Plaintiff, Plaintiff alleges she is owed an additional $1,435.

For purposes of clarification, this decision is not meant to give the impression Plaintiff will succeed in her claims against Aronow for legal malpractice.  This decision only holds that Plaintiff has alleged enough facts as to Aronow to satisfy the pleading standards for legal malpractice.

Plaintiff has not alleged any facts to support a plausible cause of action for legal malpractice against Shadood.  There is no allegation that she provided any advice to Plaintiff respecting concurrent payment of chapter 13 plan payments and loan modification payments. Additionally, postpetition attorneys' fees were paid to Law PC, not Shadood, and none of the communications referenced in the Amended Complaint were by or with Shadood.   Accordingly, Plaintiff's claims against Shadood for legal malpractice are dismissed.  *Achtman*, 464 F.3d at 337 (malpractice is a matter of law that may be decided on a motion to dismiss.).

Respecting the breach of fiduciary duty claims, a claim of breach of fiduciary duty is essentially the same as a claim for malpractice.  *Guiles v. Simser*, 35 A.D.3d 1054, 1055, 826

N.Y.S.2d 484 (N.Y. App. Div. 3d Dept. 2006).  Under New York law, where a claim for breach

of fiduciary duty is "premised on the same facts and seeking the identical relief" as a claim for

legal malpractice, the claim for fiduciary duty "is redundant and should be dismissed."

*Nordwind v. Rowland*, 584 F.3d 420, 432–33 (2d Cir. 2009) (quoting *Weil, Gotshal & Manges,*

*LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 780 N.Y.S.2d 593, 596 (N.Y. App.

Div. 1st Dept. 2004)).  Plaintiff's claim for breach of fiduciary duty against Aronow and

Shadood should be dismissed because those claims are premised on the same facts as her

malpractice claims.

## VII.    Final Judgment

Under Fed. R. Civ. P. 54(b), made applicable to this adversary proceeding by

Bankruptcy Rule 7054, states:

> "any order or other decision, however designated, that adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties does not end
> the action as to any of the claims or parties … When an action presents more
> than one claim for relief … or when multiple parties are involved, the court may
> direct entry of a final judgment as to one or more, but fewer than all claims or
> parties only if the court expressly determines that there is no just reason for
> delay.

This decision resolves all claims asserted against Shadood, the Chapter 13 Trustee, Fay,

Rushmore, and Williams.  It does not resolve all of Plaintiff's claims against Aronow or any of

Plaintiff's claims against the United States of America or Does 1-100.  None of the Amended

Complaint nor Plaintiff's other pleadings contain allegations against the United States of

America or Does 1-100.  Based on the foregoing, it is dubious there are claims against the United

States of America or Does 1-100 and, if so, when those will be resolved.  Additionally, there

does not appear to be any reason to delay entering final judgment in favor of the other

Defendants until there is an adjudication on Plaintiff's remaining claim against Aronow.

42

Accordingly, the Court directs entry of a final order in favor of Defendants Shadood, the Chapter 13 Trustee, Fay, Rushmore, and Williams.

<u>**CONCLUSION**</u>

WHEREFORE, the motions to dismiss filed by Shadood, the Chapter 13 Trustee, Williams, Fay, and Rushmore are granted, and Plaintiff's claims against those defendants are dismissed with prejudice.  Aronow's motion to dismiss the Amended Complaint is granted in part.  Plaintiff's claims against Aronow for fraud, negligent misrepresentation, wire fraud, breach of fiduciary duty, replevin, and injunctive relief are dismissed.  Aronow's motion to dismiss Plaintiff's legal malpractice claim is denied.

Each Defendant is directed to submit a proposed order conforming to this decision within fourteen (14) days of its entry.



**Dated: Brooklyn, New York**
**February 18, 2022**

_____
**Jil Mazer-Marino**
**United States Bankruptcy Judge**